1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9 KIMBERLY JOHNSON, an individual,

10        Plaintiff,

11   v.

12 ALBERTSONS LLC,

13        Defendant.

14

Case No. 2:18-cv-001678-RAJ

**DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

**NOTED ON MOTION CALENDAR:
DECEMBER 20, 2019**

**ORAL ARGUMENT REQUESTED**

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:18-CV-001678-RAJ

008501.0059/7848291.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

# TABLE OF CONTENTS

Page

I. MOTION .................................................................................................................... 1

II. INTRODUCTION ..................................................................................................... 1

III. SUMMARY OF UNDISPUTED FACTS ................................................................. 2

Plaintiff's Background.................................................................................................. 2

Plaintiff is trained on Albertsons policies .................................................................. 2

2013: Intermountain West Division President Susan Morris concludes Plaintiff underperforms, Plaintiff loses Intermountain West Division position ........................... 2

2013: Employees complain about Plaintiff—Albertsons Seattle Division President coaches Plaintiff to improve leadership style and not "threaten staff," "play favorites," or "manage by intimidation".............................................................. 3

2015: Albertsons merges with Safeway: District Manager expectations increase .......... 4

Same Store Sales versus Sales Projections.................................................................. 4

2015-2016: Another supervisor concludes Plaintiff's performance is "unacceptable" and Albertsons receives employee complaint about Plaintiff ................. 5

2016: Plaintiff's performance deemed "unacceptable" and Plaintiff concedes underperformance....................................................................................................... 6

2017: Plaintiff's "worst district" performance, and employee complaints about Plaintiff ..................................................................................................................... 7

October 2017: Performance Improvement Plan ........................................................... 8

December 2017: Albertsons shuts down Plaintiff's dirty delis and issues Plaintiff "Last Chance Warning"............................................................................................... 9

January 2018: Following a complaint of discrimination by Plaintiff, Albertsons retains independent investigator who finds no discrimination and that PIP was justified ................................................................................................................... 10

January-April 2018: Plaintiff fails to consistently improve pursuant to the PIP and her employment is terminated .............................................................................. 11

Albertsons replaces open District Manager position with a woman; district performance improves under new management..................................................................... 12

Procedural posture ................................................................................................... 13

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - i
CASE NO. 2:18-CV-001678-RAJ

008501.0059/7848291.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

IV.    LEGAL ARGUMENT ................................................................................ 13

    A.    Summary Judgment Standard of Proof............................................ 13

    B.    Plaintiff Cannot Establish a *Prima Facie* Gender Discrimination Claim. ........ 13

        1.    Plaintiff was not performing satisfactorily. .............................. 15

        2.    No evidence of more favorable treatment of similarly-situated male District Managers............................................................ 17

        3.    No causal connection between Plaintiff's gender and her termination................................................................................. 18

        4.    Albertsons had a legitimate, non-discriminatory reason for Plaintiff's termination, which was not a pretext..................... 19

    C.    Plaintiff Cannot Establish a *Prima Facie* Retaliation Claim............................ 20

    D.    Albertsons Is Not Liable for Punitive Damages as a Matter of Law................. 23

V.    CONCLUSION ...................................................................................... 24

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

# TABLE OF AUTHORITIES

Page

**Cases**

*Allison v. Hous. Auth. of City of Seattle*,
118 Wn.2d 79, 821 P.2d 34 (1991) ...................................................21

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...................................................13

*Aragon v. Republic Silver State Disposal, Inc.*,
292 F.3d 654 (9th Cir. 2002) ...................................................14

*Bergene v. Salt River Project*,
272 F.3d 1136 (9th Cir. 2001) ...................................................20

*Blair v. City of Mercer Island*,
2018 WL 2317610 (W.D.Wash. 2018) ...................................................20

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...................................................13

*Connor v. Micron Technology, Inc.*,
341 F. App'x 302 (9th Cir. 2009) ...................................................21

*Coszalter v. City of Salem*,
320 F.3d 968 (9th Cir. 2003) ...................................................22

*Cozzi v. Cty. of Marin*,
787 F. Supp. 2d 1047 (N.D. Cal. 2011) ...................................................21

*Day v. Sears Holdings Corp.*,
930 F. Supp. 2d 1146 (C.D. Cal. 2013) ...................................................18

*Domingo v. Boeing Employees' Credit Union*,
124 Wn. App. 71, 98 P.3d 1222 (2004), *abrogated on other grounds by*
*Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cty.*, 189 Wn.2d 516, 404 P.3d
464 (2017) ...................................................23

*Garcia v. City of Everett*,
14-30 RAJ, 2015 WL 1759208 (2015), *aff'd,* 728 Fed. Appx. 624 (9th Cir.
2018) ...................................................24

*Govan v. Security National Financial Corp.*,
502 F. App'x 671 (9th Cir. 2012) ...................................................22

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

*Graves v. Dep't of Game*,
    76 Wn. App. 705, 887 P.2d 424 (1994) ...................................................................21

*Hawn v. Executive Jet Management, Inc.*,
    615 F.3d 1151 (9th Cir. 2010) ...........................................................................17

*Hill v. BCTI Income Fund-I*,
    144 Wn.2d 172, 23 P.3d 440 (2001) *abrogated on other grounds by*
    *Mikkelsen*, 189 Wn.2d at 529 ..........................................................................23

*Hoang v. Wells Fargo Bank, N.A.*,
    724 F. Supp. 2d 1094 (D. Or. 2010) ....................................................................21

*Kahn v. Salerno*,
    90 Wn. App. 110, 951 P.2d 321 (1998) .................................................................18

*Kolstad v. American Dental Ass'n*,
    527 U.S. 526 (1999) ......................................................................................24

*Korslund v. Dyncorp Tri-Cities Servs., Inc.*,
    121 Wn. App. 295, 88 P.3d 966 (2004) ................................................................23

*Lassair v. Wilkie*,
    2019 WL 5212959 (W.D. Wash. 2019) ...............................................................19

*Lindsey v. Clatskanie People's Utility District*,
    140 F. Supp.3d 1077, 1089 (D. Or. October 23, 2015) ..............................................19

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ......................................................................................14

*Megivern v. Glacier Hills Inc.*,
    No. 1110026, 2012 WL 529977 (E.D. Mich. Feb. 17, 2012) .........................................18

*Mesnick v. General Electric Co.*,
    950 F.2d 816 (1st Cir. 1991) ............................................................................24

*Mondero v. Salt River Project*,
    400 F.3d 1207, 1214 (9th Cir. 2005) ..................................................................20

*Moran v. Selig*,
    447 F.3d 748 (9th Cir. 2006) ...........................................................................17

*Nilsson v. City of Mesa*,
    503 F.3d 947 (9th Cir. 2007) ...........................................................................19

*Pearson v. Mass. Bay Transp. Auth.*,
    723 F.3d 36 (1st Cir. 2013) .............................................................................21

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - iv
CASE NO. 2:18-CV-001678-RAJ

008501.0059/7848291.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

*Pottenger v. Potlatch*,
    329 F.3d 730 (9th Cir. 2003) ..................................................................16, 20

*Rivera v. Nat'l R.R. Passenger Corp.*,
    331 F.3d 1074 (9th Cir. 2003) ........................................................................13

*Salas v. Indep. Elec. Contrs. Inc.*,
    No. 11-1748 RAJ, 2013 WL 1898249 (W.D. Wash. 2013) ...............................17

*Scrivener v. Clark College*,
    181 Wn.2d 439, 334 P.3d 541 (2014) .............................................................14

*Sieden v. Chipotle Mexican Grill, Inc.*,
    846 F.3d 1013 (8th Cir. 2017) ........................................................................23

*Steiner v. Showboat Operating Co.*,
    25 F.3d 1459 (9th Cir.1994), *cert. denied*, 513 U.S. 1082 (1995) ....................18

*Surrell v. Cal. Water Serv.*,
    518 F.3d 1097 (9th Cir. 2008) ........................................................................18

*Torlowei v. Target*,
    401 F.3d 933 (8th Cir. 2005) ..........................................................................24

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
    570 U.S. 338 (2013) .......................................................................................21

*Vasquez v. Cty. Of L.A.*,
    349 F.3d 634 (9th Cir. 2003) ..........................................................................17

*Villiarimo v. Aloha Island Air, Inc.*,
    281 F.3d 1054 (9th Cir. 2002) ........................................................................20

*Walia v. Potter*,
    No. C09-1188JLR, 2013 WL 392647 (W.D. Wash. 2013) ...............................17

*Weil v. Citizens Telecom Services Company, LLC*,
    922 F.3d 993 (9th Cir. 2019) ..........................................................................16

*Williams v. City of Bellevue*,
    No. 2:16-CV-01034-RAJ, 2017 WL 4387590 (W.D. Wash. Oct. 3, 2017) .........21

**Statutes**

42 U.S.C. § 1981a...........................................................................................24

RCW 49.60 ........................................................................................15, 18, 21

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - v
CASE NO. 2:18-CV-001678-RAJ
008501.0059/7848291.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000 FAX: 206.223.7107

RCW 49.60.180(2) ................................................................................14

**Other Authorities**

Fed. R. Civ. P. 56 ...........................................................................1, 13

Fed. R. Civ. P. 56(a) ..........................................................................13

Fed. R. Civ. P. 56(c)(2) .......................................................................13

Fed. R. Civ. P. 56(c)(4) .......................................................................13

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - vi
CASE NO. 2:18-CV-001678-RAJ

008501.0059/7848291.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

## I.  MOTION

Defendant Albertsons ("Albertsons" or the "Company") moves under Fed. R. Civ. P. 56 for summary judgment dismissing Plaintiff's: (1) gender discrimination claim under state and federal law; and (2) retaliation claim under state and federal law. Dkt. #1-1 at ¶¶4.36, 5.2-5.3.

## II.  INTRODUCTION

Albertsons employed Plaintiff Kimberly Johnson ("Plaintiff") as a District Manager from 2001 to 2005, and again from approximately 2007 until her employment at the Company came to an end in April 2018. As reflected in her performance evaluation and a written warning, Plaintiff struggled with her performance as early as 2013 and 2014. After Albertsons and Safeway Inc. merged in early-2015, Plaintiff's performance continued to decline. Her district's performance consistently ranked at or near the bottom on key performance indicators as compared to other districts. After verbal counseling failed to improve her performance, on October 24, 2017, Plaintiff was placed on a Performance Improvement Plan ("PIP"). Among the deficiencies noted, was food safety. In December 2017, during her PIP, deli departments in Plaintiff's district were found to have numerous food safety policy violations, forcing upper management to close the delis during the busy Christmas season. Just days after the deli closures, Plaintiff lodged a complaint in January 2018 claiming gender discrimination. An independent, outside investigator found no gender discrimination, and concluded Albertsons had a legitimate basis for placing Plaintiff on the PIP. In April, 2018, after Plaintiff's performance under the PIP did not sufficiently improve, Plaintiff's employment was terminated. Albertsons promoted a female to fill the District Management position left open by Plaintiff's termination, and recently promoted a second female to fill a District Manager opening. Plaintiff now alleges gender discrimination and retaliation under federal and state law. Neither claim is actionable under the facts and law governing this case.

Summary judgment should be granted based on the undisputed facts because: **First**, Plaintiff cannot establish her *prima facie* case for each of her claims. **Second,** Plaintiff cannot establish causation. **Third,** Albertsons had a legitimate, non-discriminatory, non-retaliatory

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

reason for Plaintiff's termination. **Fourth,** Plaintiff cannot establish pretext: Albertsons had a good faith basis for concluding Plaintiff was not performing in a satisfactory manner.

## III.    SUMMARY OF UNDISPUTED FACTS

**Plaintiff's Background.** Albertsons hired Plaintiff as an at-will employee in 1983 as a bakery sales clerk. Declaration of D. Michael Reilly ("Reilly Decl."), Ex. A at 17:21-18:18; 61:15-16. Over the next several years, she held various positions at the company. *Id.* at 18:21–26:22. From 2001 to 2010 she served in various roles including as District Manager. *Id.* at 29:4–40:21. As District Manager, Plaintiff oversaw about 20 stores. Reilly Decl., Ex. B at 93:15-19. After an unsuccessful PIP, which started in October 2017, Plaintiff's employment ended in April 2018. Reilly Decl., Ex. A at 43:6–44:25.

**Plaintiff is trained on Albertsons policies.** Over the years, Plaintiff received and acknowledged the Albertsons employee policies numerous times, including in 2017. Declaration of Trevor Ennis ("Ennis Decl.") at ¶4 and Ex. A. The employee handbook, provided to all employees, explains how each employee is an "at-will" employee and outlines Albertsons' Courtesy, Dignity and Respect Policy and Open Door Complaint Process. The Albertsons policies prohibit discrimination, harassment, and retaliation. *Id.* at ¶5 and Ex. B. Employees also know Albertsons had an anonymous phone line to lodge complaints. *Id.* Employees, including Plaintiff, also received periodic training on Albertsons' policies, including its Courtesy, Dignity, and Respect, and Zero Tolerance policies. *Id.*

**2013: Intermountain West Division President Susan Morris concludes Plaintiff underperforms, Plaintiff loses Intermountain West Division position.** From 2010 to 2013 Plaintiff worked as a District Manager in the Intermountain West Division, in Idaho, Utah, and Wyoming. Reilly Decl., Ex. A at 43:6-17. Susan Morris became the new President of this Division in 2013. Declaration of Susan Morris ("Morris Decl.") at ¶5; Reilly Decl., Ex. C at 9:24–10:6. Morris was first hired by Albertsons at age 16, and over the next 34 years progressed from courtesy clerk to Store Director, Division President, and other positions. Morris Decl. at ¶3. Currently Morris is Albertsons' Executive Vice President and Chief Operating Officer. Reilly

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

Decl., Ex. C at 6:15-20, 7:12-23; Morris Decl. at ¶2. She supervises the Division President of the Seattle Division, Karl Schroeder.

When she became division President in 2013, Morris selected that division's management team. Reilly Decl, Ex. C at 10:17–11:9, 16:19-24. Morris assessed Plaintiff's performance and determined that Plaintiff's performance fell *"in the bottom half of"* District Managers in her division. Morris Decl. at ¶5. Morris noted how Plaintiff's stores: (1) were dirty; (2) had poor customer service at the front end; and (3) had low stock levels. Morris Decl. at ¶5. In addition, Morris observed that Plaintiff's store directors were frustrated with her. *Id.* Consequently, Morris decided not to select Plaintiff for management in her Division, leaving Plaintiff without a job. *Id.* at ¶6.

Plaintiff eventually found a position as District Manager of District 24, in what was then the Northwest Division of Albertsons in the Seattle area. *Id.* When Plaintiff assumed management of District 24, Albertsons also realigned the stores in the various districts, with District 24 losing some stores and picking up others. Reilly Decl., Ex. A at 114:8-115:12. Following the merger of Albertsons and Safeway in 2015, District 24 became part of the Seattle Division. Plaintiff was District Manager for District 24 until her employment ended in April 2018. *Id.* at 44:17-25.

**2013: Employees complain about Plaintiff—Albertsons Seattle Division President coaches Plaintiff to improve leadership style and not "threaten staff," "play favorites," or "manage by intimidation".** Plaintiff had performance difficulties from the beginning of her tenure in the Seattle area. In 2013, after staff complained that Plaintiff made improper threats, played favorites, and that they were fearful of retaliation, Albertsons Northwest Division President Dennis Bassler met with and coached Plaintiff to change her conduct. Reilly Decl., Ex. A at 61:23 – 62:22, 67:20 – 68:2, and Ex. 2. Bassler told her she was not treating staff with *"courtesy, dignity, and respect"*—even Plaintiff acknowledged her staff perceived her as being "harsh or abrupt." *Id.* Bassler issued a "Note to File" to Plaintiff on November 11, 2013, detailing the concerns that existed at that time. *Id.* Plaintiff's 2013 performance review confirmed Plaintiff's performance "needs improvement." Ennis Decl., Ex. C.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3
CASE NO. 2:18-CV-001678-RAJ
008501.0059/7848291.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

**2015: Albertsons merges with Safeway: District Manager expectations increase.**
Albertsons and Safeway merged in January 2015. Reilly Decl., Ex. B at 29:15–30:24. With that merger, management expectations, particularly for legacy Albertsons District Managers like Plaintiff, changed significantly. Declaration of Robert Backus ("Backus Decl.") at ¶5. Prior to the merger, legacy Albertsons District Managers were assessed on the bottom line performance of stores they supervised. Backus Decl. at ¶5. Post-merger expectations for District Managers included several other Key Performance Indicators both at division and company level. *Id.* District Managers were expected to visit stores regularly, coach and hold store teams accountable to achieve financial, merchandising and people development goals, and to follow company schematics and sales programs. Reilly Decl., Ex. A at 55:5-59:6, Ex. 1.

As far back as 2015 Plaintiff knew that stores in her district needed to improve in areas including: (a) lower same store sales; (b) out of stocks too high—meaning the shelves were missing stock to sell, which hurt overall sales; (c) low customer satisfaction; (d) low profitability; (e) high shrink— through customer or employee theft, or over-producing perishable merchandise that goes unsold; and (f) inefficient use of labor. Reilly Decl., Ex. A at 116:21–118:11.

**Same Store Sales versus Sales Projections.** In assessing store and district performance Albertsons looks at how a specific store performs versus that specific store or district's performance the year before. Reilly Decl., Ex. F at 57:19–58:7. This is known as "ID store sales." *Id.* This is different from "quarterly sales projections." *Id.* Quarterly sales projections are projected sales for each store in each district in the division, taking into account factors like new competition from competitor stores, new products being offered or withdrawn from stores, adding or closing stores, and how well the district is managed, based on a review of performance indicators and store tours. Backus Decl. at ¶¶9, 11. A district may improve performance significantly if the District Manager effectively follows corporate merchandising plans, lowers out of stock and shrink, and more efficiently schedules workers. *Id.* at ¶11.

To set quarterly sales projections, Seattle area division management, including division President Karl Schroeder and Senior Vice President of Operations Rob Backus, receive initial

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4
CASE NO. 2:18-CV-001678-RAJ
008501.0059/7848291.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

division-wide quarterly sales projections from Albertsons Corporate Headquarters. Backus Decl. at ¶9. Quarterly sales projections are based on various inexact assumptions and imperfect information, and reasonable minds can sometimes disagree on how much factors like competition, products offered, adding or closing stores, and how well the district is managed can affect quarterly sales projections set for a given store, district or division. *Id.* As many as 20 District Managers in the Seattle area (most of whom were men) complained that sales projections assigned to their respective districts were unreasonable or "unattainable." Reilly Decl., Ex. D at 28:8–29:20, 33:20-34:2. District Managers John Ortiz, Ralph Nesta, Jay Rothermel, and Plaintiff complained that sales projections given to their respective districts were "unattainable." *Id.* at 28:8-29:20.

Albertsons uses an interactive process with District Managers to reassess given sales projection, and management made adjustments to various district financial goals, including Plaintiff's district. Backus Decl. at ¶11. Plaintiff was invited to suggest adjustments to individual store projections in her district. Reilly Decl., Ex. A at 122:13-14, 123:7-22. Plaintiff admits that Backus conferred with her about projections at three of her stores because he was concerned about projecting the right number. *Id.* at 122:15–123:2. Plaintiff concedes that she has no evidence that gender played any role in the setting of sales projections for her district. *Id.* at 124:15-18. Moreover, it *"would make no sense"* for the division President or Vice Presidents to set unreasonably high financial projections for a particular district because performance bonuses depended on whether the division, not individual districts, met financial goals. Reilly Decl., Ex. D. at 123:20–124:125:3; Ex. E at 71:22–72:7.

**2015-2016: Another supervisor concludes Plaintiff's performance is "unacceptable" and Albertsons receives employee complaint about Plaintiff.** In February 2016, Plaintiff's supervisor at the time, Joe Perry, documented concerns about Plaintiff's performance and inappropriate staff interactions, leadership, and "lack of objectivity." Ennis Decl. at Ex. E. Among several directives, Perry felt compelled to coach Plaintiff to treat everyone fairly, without preference to prior relationships or "banner preference" ("banner preference" refers to whether a

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5
CASE NO. 2:18-CV-001678-RAJ
008501.0059/7848291.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

particular employee was affiliated with Albertsons or Safeway prior to the companies' merger). *Id.* Later that year, in August 2016, Human Resources received an anonymous employee complaint stating that Plaintiff continued to play favorites, and made gay and ageist jokes. Ennis Decl. at Ex. F. In July 2016, Perry delivered Plaintiff's performance review, rating as "unacceptable" her District's performance on "customer experience," and "unacceptable" for "customer focus"—the company's number one objective. Reilly Decl., Ex. A at 134:13–137:18, Ex. 3. Plaintiff's district ranked last of all districts for customer focus. *Id.* Even Plaintiff admitted the "unacceptable" rating was appropriate. Reilly Decl., Ex. A at 134:13–137:18, Ex. 3.

**2016: Plaintiff's performance deemed "unacceptable" and Plaintiff concedes underperformance.** In 2016, Karl Schroeder became the Seattle Division President, with Rob Backus Senior Vice President of Operations, and Kenny Smith the Area 1 Vice President. Reilly Decl., Ex. B at 4:14-19, 35:6-13; Ex. F at 8:13–10:21; Ex. G at 32:6-15. As Area 1 Vice President, Smith directly supervised District Managers, including Plaintiff. Reilly Decl., Ex. A at 86:2-6. Plaintiff initially "thought [Smith] was fine" and that they "had good dialogue." *Id.* at 87:14-16. Smith tried to help Plaintiff do her job by giving her tools he himself had used to improve metrics. *Id.* at 114:1-7. Plaintiff admits Smith never made any sexist comments to Plaintiff. *Id.* at 105:17-20.

During 2016, Plaintiff's district performed worse than all other districts overall with respect to store conditions and performance. Backus Decl. at ¶12. Although districts in the Seattle Division had a wide range of results, Plaintiff's district performance notoriously ranked at or near the bottom of the other districts, and Plaintiff knew it. *Id.* Third-party contractor sanitation scores ranked Plaintiff's stores dirtier, with a (34% success rate in 2016). *Id.* Plaintiff's stores were poorly stocked, as confirmed by Plaintiff's self-reported and division-audited "out of stock" scores which often were at 500 out of stock items in each store, when the goal was 200. *Id.* at ¶13. Plaintiff's stores were generally poorly merchandised, and not following division merchandising plans. *Id.* Independent survey responses also confirmed Plaintiff's stores provided lower levels of customer service than most districts in the division. *Id.* And most significantly:

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

Plaintiff's district was the worst performing district when compared to same store or ID sales: a comparison of her district's performance to her district performance a year earlier. ID store sales decreased (-3.87%), more than any other district in the division, with the lowest EBITDA (Earnings Before Interest Taxes Depreciation and Amortization) percentage at 2.35%. *Id.* at ¶12.

Plaintiff knew her performance was really bad, too. She emailed Backus acknowledging that 2016 was "*the worst year of [her] career.*" Reilly Decl., Ex. A at 177:23–179:4, Ex. 8. Plaintiff knew her district was not "*meeting the metrics*" and her performance review "*established*" that fact. *Id.* at 178:19-23. Plaintiff vowed not to let Schroeder or Backus down in 2017 and that she would "*never let that [poor of performance] happen... again.*" *Id.* at 178:24–179:4. But Plaintiff's performance did not markedly improve in 2017.

**2017: Plaintiff's "worst district" performance, and employee complaints about Plaintiff.** In 2017, the Seattle Division began ranking all eleven (11) districts quarterly, using eighteen (18) key performance indicators. Backus Decl. at ¶16. Plaintiff's district scored last overall. *Id.* Plaintiff knew her performance was a problem: she was failing in her earlier promise to "*never let that [poor performance from 2016] happen...again.*" On March 31, 2017, Plaintiff emailed Backus admitting the "graphs on the wall" reminded her of 2016—and that her district was reputed to be "*the worst.*" *Id.* at 176:16-20 and Ex. 8. Plaintiff again promised she "*will fix this.*" *Id.* But Plaintiff failed to fix it: when district-by-district statistics from each quarter were totaled for 2017, Plaintiff's district again ranked dead last out of 11 districts. Backus Dec. at ¶21.

During 2017, Plaintiff's subordinates also complained to Human Resources Manager Trevor Ennis about Plaintiff's lack of support and leadership, including Store Directors Staci Marshall, Dennis Johnson, Terry Payseno, and Isaac English. Reilly Decl., Ex. A at 75:23–77:10; Ex. G at 88:19–90:1, 99:18–100:21; Ex. H at 48:2–49:11; Ex. I at 44:19–49:2. Staci Marshall, for example, considered taking a demotion, rather than continuing to work as a Store Director under Plaintiff. Marshall was surprised, and pleased, when Smith transferred Marshall out of Plaintiff's District 24 and into a Store Director position in another district. Reilly Decl., Ex. G. at 102:21–103:12; Ex. I at 79:8-10. Isaac English and Terry Payseno eventually resigned. Reilly

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

Decl., Ex. H at 152:16–153:10, 153:22-155:4. Human Resources Manager Ennis, and Smith, met with Plaintiff in September 2017 to address Plaintiff's staff concerns about lack of leadership and management style. Reilly Decl., Ex. G. at 249:14–251:10; Ex. H at 47:13–48:24.

Division President Karl Schroeder toured stores in all 11 districts and found Plaintiff's store in her district were *"some of the worst-operated stores [he had] seen in 42 years"* and that Plaintiff's district was the *"worst district"* he had ever seen by far. Reilly Decl., Ex. F at 36:13-19; 43:21–44:12. He also noted that Plaintiff's district ranked in the bottom three of every one of the 18 main metrics measured. *Id.* at 44:13–45:18. Stores in Plaintiff's district *"seemed chaotic, out of control,"* *"dirty, filthy"* and were not following corporate-directed sales programs: there was a lot of regular priced merchandise displayed in sale price zones. *Id.* at 36:13–37:8, 38:15–39:6. Plaintiff's District 24 performance was *"horrific"* and *"just basics were neglected consistently"*: the financial results, store conditions, out of stocks, and leadership all were concerns. *Id.* Plaintiff admitted there were problems, but did not take responsibility for her results and blamed those problems on subordinates. Reilly Decl., Ex. A at 39:13–43:24. Schroeder also believed he had to act now because the "turnover report" showed employees in Plaintiff's district were voting with their feet, leaving employment at twice the rate of other districts. Reilly Decl., Ex. F at 48:14–49:22. He decided that a performance improvement plan was the best course of action.

**October 2017: Performance Improvement Plan.** Before meeting with Plaintiff Schroeder first consulted with his supervisor, Chief Operating Officer Susan Morris, on the plan to place Plaintiff on a Performance Improvement Plan ("PIP"). *Id.* at 117:3-15, 124:5-11; Reilly Decl., Ex. C at 25:14-23. Morris recalled her own observations of Plaintiff's sub-par performance in another division. She agreed that a PIP was appropriate; Plaintiff's performance issues should have been addressed earlier. Reilly Decl., Ex. F at 126:14–127:18; Morris Decl. at ¶7.

Schroeder then held one-on-one meetings with each district manager, and scheduled his meeting with Plaintiff on October 24, 2017. Plaintiff must have known she was in for a tough assessment: she knew her district ranked dead last in 9 of 18 performance indicators, and in the bottom three districts as to all 18 key performance indicators. Reilly Decl., Ex. A at 187:3-15;

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8
CASE NO. 2:18-CV-001678-RAJ
008501.0059/7848291.1

Ex. F at 44:14-18. Schroeder intended for his meeting with Plaintiff to be a nurturing process, trying to help her do better. Reilly Decl., Ex. F at 131:21–132:7. He reviewed Plaintiff's performance issues, including low ranked district results, store conditions, her leadership, the need for her to take responsibility, and how her leadership had affected employees negatively. Reilly Decl., Ex. F at 36:13–46:17, 116:1–120:8, 129:7–130:8, 135:8–137:17; Declaration of Karl Schroeder ("Schroeder Decl.") at Ex. A. He then indicated a PIP would be used to focus on sustained improvement. *Id.*

Over the next few weeks HR manager Ennis, Smith, and Plaintiff created the PIP together, setting agreed goals for: "out of stocks"; driving top-line sales; overall customer satisfaction; salary control; shrink control; food safety and sanitation; and expense controls. Reilly Decl., Ex. A at 218:12-18 (Plaintiff admits "*I wrote this plan, so yes. Ultimately it was my plan.*"); Ennis Decl. at ¶11 and Ex. G. The PIP provided proven methods for achieving those goals and tools Plaintiff could use to help reach those goals. Reilly Decl., Ex. H at 199:10–202:6. Plaintiff thought the PIP supported what she was trying to do in the stores and would impact results quickly. Reilly Decl., Ex. A at 217:1-4, 217:8-23. The PIP would be reviewed every two weeks. It was the expectation that while Plaintiff did not have to meet each goal, she needed to demonstrate "*immediate and sustained*" improvement and that she was "making progress." Reilly Decl., Ex. H at 202:22–215:13; Ex. G at 260:14–262:7; Ex. A 272:14-20.

On November 18, 2017, the day after the PIP had been developed, Plaintiff emailed Susan Morris complaining about the PIP. Morris Decl. at ¶8 and Ex. A. The next business day Morris responded to Plaintiff, encouraging her to make improvements and inviting Plaintiff to talk with Morris about any other concerns she may have. *Id.* Plaintiff never called Morris in response. Morris Decl. at ¶8.

**December 2017: Albertsons shuts down Plaintiff's dirty delis and issues Plaintiff "Last Chance Warning".** In mid-December 2017, Division President Schroeder made a pre-scheduled tour of Plaintiff's Everett store 3298. When he arrived, Schroeder observed Plaintiff adjusting canned product in an aisle. Reilly Decl., Ex. F at 171:3–173:16. It became quickly

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

apparent Plaintiff had not inspected the deli. During the store tour Schroeder found the deli "*embarrassingly dirty*" with raw chicken sitting in an open sink, boxes of fried chicken resting on the floor, and undated and outdated product for sale. *Id.* at 170:23–173:16. Even Plaintiff described the deli as "*filthy*" with products for sale that violated many food safety regulations. Reilly Decl., Ex. A at 205:18–206:4. This situation disappointed Schroeder because these issues were "*already [being addressed] in the PIP process.*" Reilly Decl., Ex. F at 172:3-14. Concerned with customer safety, Schroeder took the very unusual step of closing down this deli during one of the busiest times of the year. Reilly Decl., Ex. A at 206:7-21; Ex. F at 172:15–173:16. Plaintiff agreed that the deli had to be shut down. Reilly Decl., Ex. A at 206:7-21. A second deli in Plaintiff's district, at store 497, was also shut down just two days later. Schroeder Decl. at ¶10.

With Plaintiff already on a PIP that required "immediate" improvement, the deli closures could easily have justified termination of Plaintiff's employment. Ennis Decl. at ¶12. Instead, Schroeder decided in December 2017 to allow the PIP to continue to give Plaintiff time to improve her performance. Schroeder Decl. at ¶11. But given the severity of the deli issues, Schroeder issued a "Last & Final Warning" to Plaintiff due to food safety. *Id.* Shortly after the deli closures Plaintiff took a leave of absence from December 19, 2017, to January 4, 2018, so the "Last & Final Warning" was given to her upon her return on January 4. *Id.*; Reilly Decl., Ex. A at 284:2-21, Ex. 16. Plaintiff understood when she received the Last & Final Warning that food safety and sanitation were critical components of her PIP, and that the warning was directly related to the December deli closures. *Id.* Schroeder also extended the length of the PIP by the length of the leave of absence, to ensure that Plaintiff would not be penalized for taking the leave.

**January 2018: Following a complaint of discrimination by Plaintiff, Albertsons retains independent investigator who finds no discrimination and that PIP was justified.** Just before Plaintiff returned from her leave of absence, she emailed Albertsons President Bob Miller, Susan Morris, and Peggy Jones complaining of gender, minority, age and disability discrimination, and that her PIP and financial metrics were unfair. Morris Decl. at ¶9 and Ex. A. Albertsons retained an independent, outside investigator, attorney Rebecca Dean, to perform an

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

investigation of the complaint. Ennis Decl. at ¶15. Dean interviewed Johnson and twelve (12) other witnesses and concluded on February 19, 2018: "*[T]here is ample evidence of legitimate business reasons for implementing a performance improvement plan and no evidence that her gender has played a role.*" Ennis Decl. at Ex. I. Following this finding, Albertsons also redoubled its efforts and retrained Seattle Division management on Albertsons policies against gender discrimination, harassment, and retaliation, as well as a half-day training on unconscious bias. Ennis Decl. at ¶16; Schroeder Decl. at ¶12.

**January-April 2018: Plaintiff fails to consistently improve pursuant to the PIP and her employment is terminated.** Plaintiff, Ennis, and Smith continued with their PIP follow up meetings. On March 8, 2018 they held the "eight-week" follow-up PIP meeting. Reilly Decl., Ex. A at 271:6-11, Ex. 13. Plaintiff agreed that she was not meeting her PIP goals. "Out of stocks," shrink, and food safety were her three biggest areas of opportunity, but showed little or no improvement, with Plaintiff admitting: those areas "*did not show the improvement in which we were looking for.*" *Id.* at 272:14-25.

On March 28, 2018, Plaintiff attended her "ten-week," and final, follow-up PIP meeting. Reilly Decl., Ex. A at 274:21–275:4. The 12-week PIP process had actually been ongoing since November 21, 2017, so this "ten-week" follow-up was well beyond the 12-week period originally envisioned for her PIP. *See* Reilly Decl., Ex. A at Exs. 10 and 14. The results did not show immediate and sustained improvement. **First,** objective statistics (provided by Plaintiff) confirmed Plaintiff had not made immediate and sustained improvement on numerous key performance indicators. For example, the PIP set as a goal by January 12, 2018, that Plaintiff's "out of stocks" should be at "200 or less." Reilly Decl., Ex. A at Ex. 10. As of March 28, 2018, however, Plaintiff actually reported at the PIP meeting that her out of stocks were at 568—way over the goal, with no continuous improvement. The statistics were actually trending worse. Reilly Decl., Ex. A at Ex. 14. A summary of Plaintiff's performance during the PIP also failed to show continuous improvement and, in fact, Plaintiff's performance became worse in some areas. Backus Decl. at ¶¶21, 23.

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

**Second,** Plaintiff's district had not shown progress in shrink compared to the fourth quarter ("shrink" is the difference between what the Company purchases and what it sells—it can be caused by a variety of factors such as expired product, poor ordering, poor merchandising, theft, and other causes (Reilly Decl., Ex. A at 39:9–40:1) and her district still ranked in the bottom quartile. Backus Decl. at ¶23. **Third,** a March 2018 visit to the Everett deli (previously closed in December 2017 due to food safety violations) was again found to be "*filthy*" with outdated product for sale. *Id.;* Reilly Decl., Ex. A at Ex. 14. Plaintiff did not contest these findings, but thought her overall performance was generally improving. *Id.*

Schroeder, Backus, Smith, and Ennis reviewed the performance during the PIP and did not find immediate and sustained improvement. Schroeder then consulted again with Susan Morris on the decision to terminate, reviewing Plaintiff's performance under the PIP. Reilly Decl., Ex. B at 306:15–314:4; Ex. H at 251:10-21. Morris agreed with the decision to terminate Plaintiff. Demotion was not considered an option because Plaintiff, unlike others who had been demoted after only a short time as District Manager, did not succeed despite a PIP designed to improve her management in a position she had held for many years. Reilly Decl., Ex. H at 265:13 – 266:7. Also, the key performance indicators with which Plaintiff struggled, such as shrink and out of stocks were also standards Store Directors must meet. Backus Decl. at ¶23. On April 7, 2018, Backus informed Plaintiff that her employment was being terminated "*due to your overall job performance, which does not meet expectations, and your failure to successfully complete the performance improvement plan.*" Reilly Decl., Ex. A at 303:1-24, Ex. 19; Ex. B at 314:19–315:2.

**Albertsons replaces open District Manager position with a woman; district performance improves under new management.** As a result of Plaintiff's separation, Backus promoted an African-American female, Eureka McCrae, to District Manager. With this management shuffle, stores were again realigned amongst the districts, just like when Plaintiff first became a District Manager in the Seattle Division. Reilly Decl., Ex. H at 268:2–269:12; Ex. A at 114:8–115:12. Some District 23 stores were moved into District 24, the district previously managed by Plaintiff, and some stores closed so the property could be sold. Reilly Decl., Ex. B

LANE POWELL pc
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

at 96:1–98:20, 104:8–107:17. McCrae actually assumed management over some stores previously managed by Plaintiff. *Id.* Since assuming the management of those stores, profits have increased and out of stock items and shrink have decreased markedly. Backus Decl. at ¶25. Overall District 24 same store performance and comparative district ranking has also markedly improved under new management. Reilly Decl., Ex. A at 179:14-23; Backus Decl. at ¶25. Following the promotion of McCrae, the Company filled the next Seattle Division District Manager position with a woman, as well. Backus Decl. at ¶26.

**Procedural posture.** On or about October 24, 2018, Plaintiff filed this lawsuit in King County Superior Court. Albertsons timely removed the case on November 20, 2018. Trial is now set for February 24, 2020. This motion follows.

## IV.    LEGAL ARGUMENT

### A.    Summary Judgment Standard of Proof.

Summary judgment is appropriate where the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To establish a material fact, a party must present information based on personal knowledge and set forth specific, admissible facts. Fed. R. Civ. P. 56(c)(2), (4). "Conclusory allegations unsupported by factual data cannot defeat summary judgment." *Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074, 1078 (9th Cir. 2003). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

### B.    Plaintiff Cannot Establish a *Prima Facie* Gender Discrimination Claim.

The framework used to analyze Title VII gender discrimination claims applies equally to the state claim under the WLAD. The showings required for a gender-based disparate treatment

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

claim under both Title VII and the WLAD are identical, except for the causation element. Under Title VII, Plaintiff must establish the "but-for" cause of the adverse employment action, while under the WLAD she must demonstrate that the protected activity was a "substantial factor" in the employer's decision to take the adverse employment action. *Scrivener v. Clark College,* 181 Wn.2d 439, 444, 334 P.3d 541 (2014), *citing Mackay v. Acorn Custom Cabinetry, Inc.,* 127 Wn.2d 302, 310, 898 P.2d 284 (1995) (the "substantial factor" test is the appropriate standard for determining whether an employer's adverse employment decision was "because of" one of the prohibited factors enumerated in RCW 49.60.180(2)).

Plaintiff concedes that she has no direct evidence of discriminatory animus. Reilly Decl., Ex. A at 152:22–155:7. In the absence of direct evidence, the *McDonnell Douglas* burden shifting framework is used. *Aragon v. Republic Silver State Disposal, Inc.,* 292 F.3d 654, 658 (9th Cir. 2002) (*citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)). Under this framework, Plaintiff must first establish her *prima facie* case: (1) that she is a member of a protected class; (2) that she performed her job satisfactorily; (3) that she suffered an adverse employment action; and (4) that her employer treated her differently than a similarly-situated employee outside of her protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973). Once the *prima facie* case is established, the employer must show a legitimate reason for the treatment. *McDonnell Douglas*, 411 U.S. at 802–04. Finally, the plaintiff must show pretext, and in Washington, the plaintiff "may satisfy the pretext prong of the *McDonnell Douglas* framework by offering sufficient evidence to create a genuine issue of material fact either (1) that the employer's articulated reason for its action is pretextual or (2) that although the employer's stated reason is legitimate, discrimination nevertheless was a substantial factor motivating the employer." *Scrivener*, 181 Wn.2d at 441–42. Plaintiff's claim should be rejected for several independent reasons.

Plaintiff's Title VII and RCW 49.60 gender discrimination claim asserts that "[a] substantial factor and/or motivating factor in the decision to terminate Ms. Johnson's

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

employment was … gender discrimination …" Dkt. #1-1 at ¶4.36. Plaintiff cannot meet her burden and her claim should be dismissed.

### 1. **Plaintiff was not performing satisfactorily.**

Overwhelming evidence proves that Plaintiff had a long history of not performing satisfactory work and thus she cannot establish the second element of her *prima facie* case.

**First,** over the years different Albertsons managers, including Dennis Bassler, Susan Morris, and Joe Perry observed Plaintiff's unsatisfactory performance. **Second,** following the 2015 Albertsons-Safeway merger, District Manager performance expectations for all District Managers increased, and specific metrics were applied. Plaintiff admitted her district was not "*meeting the metrics*" and her performance review "*established*" that fact. Reilly Decl., Ex. A at 178:19-23. Plaintiff outright acknowledged that 2016 was "*the worst year of [her] career.*" Reilly Decl., Ex. A at 177:23–179:4, Ex. 8. Plaintiff even vowed not to let her supervisors, Schroeder or Backus, down in 2017 and that she would "*never let that [poor of performance] happen ... again.*" *Id.* at 178:24–179:4.

**Third,** Plaintiff's did not perform well again in 2017, and she knew it. Plaintiff's district ranked last in nine of the 18 metrics, and ranked in the bottom three of all 18 main metrics measured. Reilly Decl., Ex. F at 44:13–45:18. The Division President observed that the stores in Plaintiff's district were found to be "*dirty, filthy*" and were "*some of the worst-operated stores [he had] seen in 42 years*" and that Plaintiff's district was the "*worst district*" he had ever seen by far. *Id.* at 36:13-19, 43:21–44:12. Plaintiff's district also was not following corporate-directed sales programs. Store Directors complained about Plaintiff's management, offering to resign positions, and a "turnover report" confirmed employees were leaving her district at twice the rate of other districts. *Id.* at 49:1-22.

During 2017 and 2018, Plaintiff actually provided statistics during the PIP process that showed she was not making continuous improvement during the PIP. For example, Plaintiff submitted numbers confirming she had failed to improve on "out of stocks," meaning her store shelves were missing merchandise, which hurt store sales. The PIP set "out of stock" goals at

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15
CASE NO. 2:18-CV-001678-RAJ
008501.0059/7848291.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

"200 or less by January 12, 2018." Reilly Decl., Ex. A at Ex. 10. During the PIP, Plaintiff's performance actually grew worse over time, and never came anywhere close to the goal. At the two week PIP review Plaintiff disclosed her "out of stocks" were at 590 (Reilly Decl., Ex. A at Ex. 11), at week six of the PIP review they were at 591 (Reilly Decl., Ex. A at Ex. 12), at week eight they were at 458 (Reilly Decl., Ex. A at Ex. 13), and at week ten, the last PIP review, Plaintiff reported that out of stocks were back *up* to 568 (Reilly Decl., Ex. A at Ex. 14).

Another key goal of the PIP was for Plaintiff's district to achieve food safety and sanitation compliance. Reilly Decl., Ex. A at Ex. 10. But even Plaintiff admits that in December 2017, while on her PIP, Plaintiff's two delis had to be shut down due to food safety violations. This alone could have justified her termination. Ennis Decl. at ¶12. One of the delis was seen again during the last PIP review in March 2018 and again was found to be "*filthy*" with outdated product for sale. Backus Decl. at ¶23; Reilly Decl., Ex. A at Ex. 14.

Plaintiff's district also had not shown significant progress in shrink compared to the fourth quarter, with her district still ranked in the bottom quartile. These and other failures to achieve her PIP goals demonstrate a documented and abundant record of performance issues. Under such circumstances, Plaintiff cannot establish that she was performing her job satisfactorily:

> The undisputed evidence, including [plaintiff's] performance reviews and his own self-ratings, shows that [his] performance was steadily declining … [and] an objective total self-report score of 2.6 out of 5, which [plaintiff] admitted reflected performance that was unsatisfactory. [Plaintiff] does not dispute that he missed deadlines and failed to complete action items [ ], nor does he dispute that he was placed on a PIP to address his performance and warned that termination was a possible outcome if his performance failed to improve. On this record, [plaintiff] has not shown that his performance was satisfactory. Therefore, he has not met the second element.

*Weil v. Citizens Telecom Services Company, LLC*, 922 F.3d 993, 1003–04 (9th Cir. 2019) (affirming summary judgment on discriminatory termination claims under Title VII and WLAD).

*see also Pottenger v. Potlatch*, 329 F.3d 730, 748-49 (9th Cir. 2003) (plaintiff's management was lacking because his division was "losing money and the company lacked faith that [he] was the one to turn [the division] around").

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16
CASE NO. 2:18-CV-001678-RAJ
008501.0059/7848291.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

### 2.    No evidence of more favorable treatment of similarly-situated male District Managers.

Plaintiff also fails to establish that she was treated less favorably than similarly situated individuals outside of her protected class, the fourth element of her *prima facie* case. The Ninth Circuit has previously held that employees are only similar if they have "similar jobs and display similar conduct." *Vasquez v. Cty. Of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003). Plaintiff has the burden of establishing that she is "similarly situated" to her purported comparators in all material respects. *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006).

Here, there is no evidence that any male District Manager is similarly situated. No other male District Manager had the poor performance that Plaintiff had. No other District Manager (male or female) (1) ranked consistently as low as Plaintiff overall in 18 key performance indicators, (2) had complaints from subordinate Store Directors (wanting to resign) over lack of leadership and support (like Plaintiff received); (3) was required to shut down two delis while on a PIP; and (4) had double the employee turnover of other districts. *See, e.g., Vasquez*, (another employee not considered similar to plaintiff because, even though they held the same level position, the other employee "did not engage in problematic conduct of comparable seriousness."); *Hawn v. Executive Jet Management, Inc.*, 615 F.3d 1151, 1159-60 (9th Cir. 2010) (employees in same position not similarly situated because, although they allegedly engaged in similar harassing conduct, it did not prompt any complaints). District courts in the Ninth Circuit also require some similarity in conduct or performance among comparators. *See, e.g., Walia v. Potter*, No. C09-1188JLR, 2013 WL 392647, at *3 (W.D. Wash. 2013); *Salas v. Indep. Elec. Contrs. Inc.*, No. 11-1748 RAJ, 2013 WL 1898249, at *8 (W.D. Wash. 2013).

To the extent Plaintiff alleges that other men and women District Managers were demoted, there is no evidence it was due to gender. The Dean investigation into Plaintiff's complaints also failed to validate any allegations of gender discrimination with respect to Plaintiff's employment and the employment of other females. Numerous courts have held that similar "me too" evidence is not evidence of discrimination, and it not so here. *See, e.g., Day v.*

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

*Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1185 (C.D. Cal. 2013); *Megivern v. Glacier Hills Inc.*, No. 1110026, 2012 WL 529977, at *20 (E.D. Mich. Feb. 17, 2012).

      **3.**    <u>**No causal connection between Plaintiff's gender and her termination.**</u>

Plaintiff admits that no discriminatory acts against her occurred prior to March 1, 2017. Reilly Decl., Ex. A at 156:4–157:4, Ex. 6. Thus, Plaintiff's Title VII and RCW 49.60 gender discrimination claim are premised entirely on her termination. Dkt. #1-1 at ¶4.36. Plaintiff has offered no direct or indirect evidence that her termination was because she was a woman. Quite the contrary, the undisputed facts, including her own acknowledgement about her poor performance and poor performance of the stores in her district, confirm Plaintiff's dismal performance record, and her failed PIP, which easily justified her termination. Gender had nothing to do with it.

Although Plaintiff vaguely asserted in a letter to Susan Morris that Albertsons managers treated "women, people of minority and age with harassment[.]" Morris Decl. at Ex. A. This evidence and argument should be rejected as "evidence" of causation for several reasons. **First,** Plaintiff has not asserted a hostile work environment/harassment claim and the evidence asserted supports an unpled claim. **Second,** such allegations of purported treatment to others does not establish causation in a disparate treatment claim, anyway. **Third,** Plaintiff testified that she thought the supervising manager was *"an equal opportunity bully"* who treated both men and women poorly. Reilly Decl., Ex. A at 170:23 – 171:1. **Fourth,** there is no evidence that any purported conduct at women was more abusive than with men. *See, e.g., Kahn v. Salerno*, 90 Wn. App. 110, 124, 951 P.2d 321 (1998) (insufficient evidence to determine whether Hoch was more abusive toward female employees); *Steiner v. Showboat Operating Co.,* 25 F.3d 1459 (9th Cir.1994), *cert. denied,* 513 U.S. 1082 (1995). Finally, and most importantly, if the termination was motivated by gender, why was Plaintiff's position filled by a female, and why did the Seattle Division fill its next District Manager position by a woman. Backus Decl. at ¶¶24-26.

Plaintiff fails entirely to articulate a causal connection between her termination and her gender. Her unsubstantiated allegations are not evidence and cannot support a claim of discrimination. *See Surrell v. Cal. Water Serv.*, 518 F.3d 1097 (9th Cir. 2008).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18
CASE NO. 2:18-CV-001678-RAJ
008501.0059/7848291.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

### 4. Albertsons had a legitimate, non-discriminatory reason for Plaintiff's termination, which was not a pretext.

In the event the Court determines that Plaintiff has established her *prima facie* case, the burden then shifts to Albertsons to articulate a legitimate, discriminatory, non-retaliatory reason for its actions. *See Nilsson v. City of Mesa*, 503 F.3d 947, 953–54 (9th Cir. 2007). Once it does, Plaintiff must then produce evidence that its reason was a pretext for retaliation. *Id.* "Only the burden of production shifts [to defendant]; the plaintiff still carries the burden of persuasion." *Lindsey v. Clatskanie People's Utility District*, 140 F. Supp.3d 1077, 1089 (D. Or. October 23, 2015) (*citing Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Albertsons easily meets its burden in establishing a legitimate reason for Plaintiff's termination. Plaintiff admitted that her performance in 2016 was not satisfactory. On March 31, 2017, Plaintiff emailed Backus and admitted the poor performance on the district "graphs on the wall" reminded her of 2016—and that her district was reputed to be "*the worst.*" Reilly Decl., Ex. A at 176:16-20 and Ex. 8. Plaintiff again knew that she had to "*fix this.*" *Id.* In September 2017, Ennis and Smith met with Plaintiff to help her address the leadership issues and concerns that had been expressed about her management style. Reilly Decl., Ex. G. at 249:14–251:10; Ex. H at 47:13–48:24. Albertsons then devoted substantial effort through the PIP to attempt to help Plaintiff improve. During Plaintiff's PIP, however, Albertsons was forced to shut down two of Plaintiff's delis. This alone could have justified her termination. Albertsons nevertheless continued with the PIP review process and Plaintiff herself presented facts that substantiated that she had not had steady improvement under the PIP. Albertsons "*has articulated a legitimate non-discriminatory reason for its actions: Plaintiff's performance, as documented by several different supervisors, was below the defined quality and quantity metrics and as a result, she was placed on a performance improvement plan [then terminated].*" *Lassair v. Wilkie*, 2019 WL 5212959 at \*5 (W.D. Wash. 2019).

Having set forth a legitimate business reason for its decision, Plaintiff must present specific and substantial evidence that Albertsons' reason for termination (1) has no basis in fact,

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19
CASE NO. 2:18-CV-001678-RAJ
008501.0059/7848291.1

**LANE POWELL** pc
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

or (2) even if based in fact, the decision was not motivated by this reason, or (3) the reason is insufficient to motivate an adverse employment decision. *Bergene v. Salt River Project,* 272 F.3d 1136, 1140-41 (9th Cir. 2001). In judging whether an employer's proffered justification is "false," courts "only require that an employer honestly believed its reason for its actions, even if its reason is 'foolish or trivial or even baseless.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) ("[C]ourts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless") (citation and quotations omitted); *Blair v. City of Mercer Island*, 2018 WL 2317610, at *3 (W.D. Wash. 2018). The compendium of evidence makes clear that Albertsons' reason – Plaintiff's poor district performance, and failure to consistently improve during the PIP – was an honestly-held belief.

Faced with legitimate reasons for her termination, Plaintiff cannot demonstrate pretext because she does not have specific, substantial evidence that Albertsons' reasons are unworthy of belief. *See Mondero v. Salt River Project*, 400 F.3d 1207, 1214 (9th Cir. 2005). The Court is required only to make "reasonable" inferences in Plaintiff's favor, and it is unreasonable to conclude that Plaintiff's well-documented and detailed performance deficiencies were made up as a subterfuge for discrimination, particularly given that there is *no* evidence of any discriminatory animus. Employers are entitled to make decisions based on employees' "subjective" skills, even if employees disagree with them. *Pottenger*, 329 F.3d at 748-49 (9th Cir. 2003) (the employer "has leeway to make subjective business decisions, even bad ones"). There is absolutely no evidence of discriminatory animus based on Plaintiff's gender.

C.   **Plaintiff Cannot Establish a *Prima Facie* Retaliation Claim.**

Plaintiff's Title VII and RCW 49.60 retaliation claim asserts that "[a] substantial factor and/or motivating factor in the decision to terminate Ms. Johnson's employment was … retaliation for having complained about gender discrimination." Dkt. #1-1 at ¶4.36. There is no evidence supporting that allegation.

As with disparate treatment claims under Title VII and the WLAD, the framework used to analyze Title VII retaliation claims applies equally to the state claims. *Graves v. Dep't of*

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

*Game*, 76 Wn. App. 705, 712, 887 P.2d 424 (1994). The showings required for a retaliation claim under both Title VII and the WLAD are identical, except for the causation element. Under Title VII, Plaintiff must establish the "but-for" cause of the adverse employment action, while under the WLAD she must demonstrate that the protected activity was a "substantial factor" in the employer's decision to take the adverse employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) (Title VII retaliation claims "require proof that the [employer's] desire to retaliate was the but-for cause of the challenged employment action"); *Allison v. Hous. Auth. of City of Seattle*, 118 Wn.2d 79, 95, 821 P.2d 34 (1991) (rejecting "but-for" standard of causation in favor of more lenient "substantial factor" standard).

Under this framework, Plaintiff must first establish her *prima facie* case: (1) that she engaged in protected activity; (2) she suffered an adverse employment action; and (3) that there is a causal connection between the protected activity and the adverse employment action. *Connor v. Micron Technology, Inc.*, 341 F. App'x 302, 304 (9th Cir. 2009). Plaintiff has the burden of affirmatively proving that her discrimination complaint "was at the heart of" Albertsons' decision to terminate her employment. *Williams v. City of Bellevue*, No. 2:16-CV-01034-RAJ, 2017 WL 4387590, at *7 (W.D. Wash. Oct. 3, 2017) (internal citation omitted).

Here, Plaintiff's retaliation claim should be rejected for several reasons. **First,** to the extent Plaintiff alleges retaliation because of her PIP or Last Chance Warning, those are not adverse employment actions. *See, e.g.*, *Cozzi v. Cty. of Marin*, 787 F. Supp. 2d 1047, 1061 (N.D. Cal. 2011) (written warning did not constitute negative employment action because it did not result in a significant change in employment status, and was based on admitted behavior); *Hoang v. Wells Fargo Bank, N.A.*, 724 F. Supp. 2d 1094, 1104 (D. Or. 2010) (a warning letter which affected no materially adverse change in the terms and conditions of the plaintiff's employment was not an adverse employment action under a claim of discrimination).

**Second,** there is no causation between Plaintiff's complaint to Bob Miller, or any complaint, and her eventual termination. Plaintiff's performance problems pre-date Plaintiff's alleged protected activity. *See, e.g., Pearson v. Mass. Bay Transp. Auth.*, 723 F.3d 36 (1st Cir.

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

2013) (No causal link between protected activity and termination where "problems with employee pre-date any knowledge that the employee has engaged in protected activity ... it is not permissible to draw the inference that subsequent adverse actions, taken after the employer acquires such knowledge, are motivated by retaliation ... Were the rule otherwise, then a disgruntled employee, no matter how poor his performance ... could effectively inhibit a well-deserved discharge by merely filing ... a discrimination complaint."). There is no evidence Albertsons fabricated those deficiencies or that its reasons for Plaintiff's termination are unworthy of credence.

Moreover, it is undisputed that others complained about management, and were not terminated. Plaintiff concedes that multiple District Managers and Store Directors (male and female) complained to Albertsons about Backus and Smith. Reilly Decl., Ex. A at 165:12 – 170:22, 197:13 – 198:20. Schroeder learned of those complaints, coming from men and women. Reilly Decl., Ex. H at 72:20–73:13, 75:16–80:8, 103:21–113:24; 80:11–81:23. And, as a result, Schroeder specifically coached Backus and Smith. Reilly Decl., Ex. H at 113:25–114:9; Ex. F at 111:20–112:12; Ex. B at 52:11-16; Schroeder Decl. at ¶12. Plaintiff may mistakenly assert causation is established by the timing of the PIP, or her termination. But mere coincidence of timing is insufficient to satisfy the causation of Plaintiff's claim as a matter of law. *See Govan v. Security National Financial Corp.*, 502 F. App'x 671, 673-74 (9th Cir. 2012); *see also Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003) (summary judgment may be appropriate if the totality of facts fail to establish the requisite causal link).

**Third,** Albertsons had a legitimate non-retaliatory basis for the PIP and her eventual termination. Plaintiff admittedly had the "*worst*" performance year of her career in 2016. In 2017 Plaintiff's poor performance continued, necessitating the PIP. While working to improve performance toward her PIP objectives, which in part was focused on food safety, Albertsons was forced to close two of Plaintiff's delis. Even Plaintiff admitted the delis were filthy and selling out-of-date product. Albertsons' termination of Plaintiff's employment is well supported by longstanding performance deficiencies, some of which even Plaintiff agrees existed.

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

**Fourth,** Plaintiff cannot show pretext. It is undisputed that Plaintiff engaged in the conduct that necessitated the PIP. Albertsons had a good faith basis to institute the PIP, and the eventual termination. Albertsons could have been justified in terminating Plaintiff's employment after the delis had to be closed down in December 2017. However, Albertsons wanted to proceed with the PIP with hopes of securing improvement. Plaintiff concedes that she has no direct evidence of retaliatory animus. Reilly Decl., Ex. A at 155:10–155:24. Albertsons had a good faith, non-retaliatory basis for its actions and Plaintiff cannot establish pretext. *See, e.g., Sieden v. Chipotle Mexican Grill, Inc.*, 846 F.3d 1013 (8th Cir. 2017) (summary judgment against former manager's retaliation claim affirmed—discharge for poor performance not pretextual—although plaintiff had received four promotions between 2001-2011, his most recent record showed concerns about performance a year before alleged protected activity).

Even if Albertsons was wrong in determining that Plaintiff belonged on the PIP, it is undisputed that Albertsons *reasonably believed* Plaintiff's performance was substandard, and the PIP was warranted. The law is clear that making an incorrect personnel decision does not establish a legally cognizable claim. *Domingo v. Boeing Employees' Credit Union*, 124 Wn. App. 71, 89, 98 P.3d 1222 (2004), *abrogated on other grounds by Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cty.*, 189 Wn.2d 516, 528, 404 P.3d 464 (2017) (incorrect thinking on the decision-maker's part does not prove the employer's explanation is pretext.); *see also Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 190 n.14, 23 P.3d 440 (2001) *abrogated on other grounds by Mikkelsen*, 189 Wn.2d at 529 (recognizing that an employer may lawfully discharge an at-will employee whom it reasonably perceives has misbehaved). Plaintiff's retaliation claim should be dismissed.

**D.** **Albertsons Is Not Liable for Punitive Damages as a Matter of Law.**

**First,** punitive damages are unavailable as a matter of law under state law. *Korslund v. Dyncorp Tri-Cities Servs., Inc.*, 121 Wn. App. 295, 334, 88 P.3d 966 (2004) ("Washington law bars punitive damage awards unless they are authorized by statute").

**Second,** Plaintiff cannot establish she is entitled to an award of punitive damages under Title VII. Punitive damages are available only on a heightened showing of intentional

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

discrimination carried out with "malice or with reckless indifference to [plaintiff's] federally protected rights." 42 U.S.C. § 1981a; *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 534 (1999).

Here, there is no evidence that Albertsons acted with "malice" or was "recklessly indifferent." Albertsons has comprehensive anti-discrimination and anti-retaliation policies and trains all employees on these policies. Moreover, following the receipt of Plaintiff's email to Bob Miller in early January 2018, Albertsons retained an independent, outside investigator to investigate Plaintiff's allegations. The investigator concluded Albertsons had a legitimate business reason for Plaintiff's PIP, and also found no gender discrimination had occurred. Even though the investigation findings confirmed no discrimination, and that the PIP was properly given to Plaintiff, Albertsons required post-investigation that all Seattle Division senior management undergo additional anti-discrimination training. Reilly Decl., Ex. F at 155:17-21. Under *Kolstad*, Albertsons' purported violation of Title VII did not even remotely approach the degree of maliciousness or recklessness to support a claim for punitive damages.

## V.     <u>CONCLUSION</u>

"Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Torlowei v. Target,* 401 F.3d 933, 935 (8th Cir. 2005); *see Garcia v. City of Everett*, 14-30 RAJ, 2015 WL 1759208, at *7 (2015), *aff'd,* 728 Fed. Appx. 624 (9th Cir. 2018). Nor do they "assess[ ] the merits—or even the rationality—of employers' nondiscriminatory business decisions." *Mesnick v. General Electric Co.,* 950 F.2d 816, 825 (1st Cir. 1991). The Court should decline Plaintiff's invitation to do so in this case. Summary judgment in favor of Albertsons is appropriate as a matter of law.

///

///

///

///

///

///

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

1    DATED: November 26, 2019

2                              LANE POWELL PC

3

4                              By   s/ D. Michael Reilly
                                    D. Michael Reilly, WSBA No. 14674
5                                   Beth G. Joffe, WSBA No. 42782
                                    Sean D. Jackson, WSBA No. 33615
6                                   1420 Fifth Avenue, Suite 4200
                                    P.O. Box 91302
7                                   Seattle, WA  98111-9402
                                    Telephone: 206.223.7000
8                                   Facsimile: 206.223.7107
                                    Email:  reillym@lanepowell.com
9                                   joffeb@lanepowell.com
                                    jacksons@lanepowell.com
10                             Attorneys for Defendant Albertsons, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**CERTIFICATE OF SERVICE**

I hereby certify that on November 26, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice. I hereby certify that the following document was sent to the following CM/ECF participants:

Ms. Susan B. Mindenbergs
Mr. Jeffrey L. Needle
705 2nd Avenue, Suite 1050
Seattle, WA 98104
(206) 447-1523
susanmm@msn.com;
jneedlel@wolfenet.com;
lrlopez.paralegal@gmail.com;
christine.smlaw@gmail.com

Executed on the 26th day of November, 2019, at Seattle, Washington.

*s/ Shanynn Foster*
Shanynn Foster, Legal Assistant

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

008501.0059/7848291.1