HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KIMBERLY ANN JOHNSON,

                    Plaintiff,

v.

ALBERTSONS, LLC,

                    Defendant.

Case No. 2:18-cv-01678 RAJ

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

**MOTION NOTED: DECEMBER 20, 2019**

**Susan B. Mindenbergs**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

# TABLE OF CONTENTS

I.  INTRODUCTION........................................................................................1

II. FACTUAL BACKGROUND..........................................................................1

    A.  Ms. Johnson was employed by Albertsons for nearly 35 years........................1

    B. From 2010 to 2017, Ms. Johnson's work performance was satisfactory...........1

        1)  Bassler's letter to Ms. Johnson was later rescinded..............................1

        2)  District 24 had Significant Challenges when Ms. Johnson Assumed
            Management of It in 2013...............................................................2

        3)  Perry complaint was resolved in Ms. Johnson's favor...........................2

    C. Robert Backus Began Systematically Eliminating Women from High-level
       Management Positions in the Seattle Division..............................................3

    D.  Ms. Johnson Reported that Mr. Backus was Engaging in Gender Discrimination
       against Female Managers......................................................................4

    E. Mr. Backus Hyper-inflated the Sales Projections for District 24 after Ms. Johnson
       Complained about Gender Discrimination.................................................5

        1)  Sales projections dictated the percentage of labor for each store is the
            Districts..................................................................................6

        2)  The inflated projections adversely affected the performance of District 24 in
            2017......................................................................................7

        3)  Store Director Staci Marshall wanted an Assistant Store Director.............8

        4)  The deli closure at store 3298 was a one-time event that Ms. Johnson
            immediately remedied..................................................................8

    F.  Albertsons Advertised for a Replacement Months Before Ms. Johnson was Fired...........8

    G.  Albertsons Fired Ms. Johnson Despite Significant Improvements in District 24............9

    H.  Ms. Johnson's Male Replacement was Treated More Favorably.....................9

III.  ARGUMENT OF COUNSEL........................................................................10

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

A.  Summary Judgment Standard..................................................................................10

B.  Plaintiff Rejects the *McDonnell Douglas* Shifting Burden Model at Summary
    Judgment...........................................................................................................11

C.  Plaintiff Also Satisfies the *McDonnell Douglas* Model.............................................13

    1) Ms. Johnson was performing her job satisfactorily until the Seattle
       Division leadership's intentionally hyper-inflated District 24 sales
       projections..................................................................................................14

    2) Female managers, including Ms. Johnson, were treated differently than the
       ten male District Managers in the Seattle Division..............................................17

    3) Albertsons replaced Ms. Johnson with a male District Manager.........................18

D.  Ms. Johnson Produces Substantial Evidence of Retaliation to Meet her *Prima
    Facie* Obligation..............................................................................................19

    1) Ms. Johnson's complaints to Trevor Ennis and John Ortiz about
       demotions, terminations, and harsh treatment of female managers
       constitute protected conduct........................................................................20

    2) Ms. Johnson produces sufficient evidence to show a causal nexus between
       her protected conduct and the termination of her employment............................21

E.  Albertsons' Alleged Non-discriminatory Reason for Firing Ms. Johnson is Unworthy of
    Belief and Merely Pretext for its Retaliatory Actions Because She Engaged in Protected
    Conduct............................................................................................................22

F.  Punitive Damages are available when there is Reckless Indifference to the Federally
    Protected Rights Plaintiff....................................................................................23

IV. MOTION TO STRIKE..........................................................................................24

V. CONCLUSION....................................................................................................24

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

# TABLE OF AUTHORITIES

## STATE CASES

*Mackay v. Acorn Custom Cabinetry, Inc.,* 127 Wn.2d 302, 898 P.2d 284 (1995).......................12

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).............10

*Bagdadi v. Nazar*, 84 F.3d 1194 (9th Cir.1996)........................................................10

*Beck v. United Food & Commercial Workers Union Local 99*, 506 F.3d 874
    (9th Cir.2007)..........................................................................17

*Texas Dept. of Community Affairs v. Burdine*, 450 US 248, 101 S. Ct. 1089,
    67 L. Ed. 2d 207 (1981).................................................................14

*Diaz v. Am. Tel. & Tel.*, 752 F.2d 1356 (9th Cir.1985)................................................17-19

*Dominguez-Curry v. Nevada Transp. Dept.* 424 F.3d 1027 (9th Cir. 2005)....................................11

*Earl v. Nielsen Media Research, Inc.*, 658 F. 3d 1108 (9th Cir. 2011)..........................................17

*Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277 (7th Cir. 1977)...............................14

*Furnco Construction Corp. v. Waters*, 438 U.S. 567 (1978)......................................13-14

*Garcia v. Lawn*, 805 F.2d 1400 (9th Cir. 1986).......................................................19

*Gregory v. Daly*, 243 F. 3d 687 (2nd Cir. 2001).....................................................14

*Hawn v. Executive Jet Management, Inc.*, 615 F.3d 1151, (Cir. 2010)........................................17

*Kolstad v. American Dental Association*, 139 F.3d 958 (D.C. Cir. 1998),
    vacated by 527 U.S. 526 (1999).........................................................23-24

*Lam v. University of Hawai'i,* 40 F.3d 1551 (9th Cir. 1994)...............................................10

*Lindsey v. SLT Los Angeles*, LLC, 447 F.3d 1138 (9th Cir. 2005)................................................10

*Little v. Windermere Relocation, Inc.*, 301 F.3d 958 (9th Cir. 2002)..........................................20

*Mackay v. Acorn Custom Cabinetry, Inc.,* 127 Wn.2d 302, 898 P.2d 284 (1995).......................12

*McDonnell Douglas v. Green*, 411 U.S. 792 (1973)........................................................11-14, 22

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

*McGinest v. GTE Service Corp.,* 360 F.3d 1103 (9th Cir. 2004)....................................................11

*Miller v. Fairchild Industries, Inc.*, 885 F.2d 498 (9th Cir. 1989)...............................................21

*Moyo v. Gomez*, 40 F.3d 982 (9th Cir. 1994).............................................................................20

*Nilsson v. City of Mesa*, 503 F.3d 947 (9th Cir. 2007)................................................................22

*Pacific Shores Properties v. City of Newport Beach*, 730 F. 3d 1142 (9th Cir. 2013).............11-12

*Parker v. Arkansas Department of Correction*, 888 F.3d 396 (Cir. 2018).................................24

*Passantino v. Johnson & Johnson*, 207 F.3d 599 (9th Cir. 2000).....................................19-20, 21

*Patterson v. McLean Credit Union*, 491 U.S. 164 (1989)...........................................................14

*Peterson v. Hewlett Packard*, 358 F.3d 599 (9th Cir. 2004).......................................................17

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 US 133 (2000)..........................................15-16

*Schnidrig v. Columbia Mach., Inc.,* 80 F.3d 1406 (9th Cir. 1996)..............................................10

*Scrivener v. Clark College*, 181 Wn.2d 439, 334 P.3d 541 (2014).............................................12

*Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061 (9th Cir. 2003)......................................12, 22

*Sullivan v. Dollar Tree Stores, Inc.*, 623 F. 3d 770, 777 (9th Cir. 2010)....................................24

*Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*, 330 F.3d 1110 (9th Cir. 2003)...............24

*Tsai v. AT&T Mobility, LLC*, 2009 WL 666939, at *2 (W.D. Wash. March 11, 2009)...............18

*White v. Baxter Healthcare Corp.*, 533 F.3d 381 (6th Cir. 2008)...............................................14

*Yartzoff v. Thomas*, 809 F.2d 1371 (9th Cir. 1987)....................................................................21

## STATE LAW

RCW 49.60 *et seq.* (Washington Law Against Discrimination).......................................................1

## FEDERAL LAW

42 U.S.C. § 2000e...................................................................................................................1, 12

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO FOR SUMMARY JUDGMENT
Case No. 2:18-cv-01678-RAJ - Page iv

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

## OTHER AUTHORITIES

Fed. R. Ev. 802...................................................................................................................24

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

# I.    INTRODUCTION

Plaintiff Kimberly Johnson produces substantial evidence supporting both her claims of sex/gender discrimination and retaliation under 42 U.S.C. § 2000e, Title VII, and RCW 49.60 *et seq.*, sufficient to constitute genuine issues of material fact and to overcome summary judgment. Therefore, Ms. Johnson respectfully requests this Court deny defendant's motion.

# II.    FACTUAL BACKGROUND

## A.  Ms. Johnson was employed by Albertsons for nearly 35 years.

Plaintiff Kimberly Johnson (hereafter Ms. Johnson) began her employment with Albertsons as a teenager in the bakery department of an Albertsons store in 1983. Johnson dep., 17:15-23. Between 2010 and 2013, Ms. Johnson supervised approximately 20 grocery stores in Idaho, Utah, and parts of Wyoming. Johnson dep., 43:6-9. Ms. Johnson was the top ranked District Manager in the Intermountain West Division during her tenure.  Johnson decl., ¶ 5.  In 2013, Ms. Johnson's District was the second highest money maker in the entire Intermountain West Division. Johnson decl., ¶ 6. Ms. Johnson's supervisors conferred the "Great Performer" award on her in 2010 and 2011.  Johnson decl., ¶ 7, Ennis dep., Ex. 30.  Contrary to the Morris testimony, the Boise stores managed by Ms. Johnson were some of the highest performing stores in the Division and were in the best condition of most of the Division stores.  Johnson decl., ¶¶ 8, 9, 10.  In 2013, Albertsons offered to transfer Ms. Johnson in 2013 to the Northwest Division in Seattle where she had a home. Johnson decl., ¶ 12. She accepted the transfer.

## B.  From 2010 to 2017, Ms. Johnson's work performance was satisfactory.

### 1)  Bassler's letter to Ms. Johnson was later rescinded.

Northwest Division President Dennis Bassler demoted a District Manager in 2013, then appointed Ms. Johnson that job.  Johnson decl., ¶ 14.  Mr. Bassler assigned the demoted employee

**Susan B. Mindenbergs**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

to work for Ms. Johnson. Johnson decl., ¶ 14. After writing a note about her interactions with staff, Mr. Bassler later met with Ms. Johnson and the demoted employee to tell them that the complaints about Ms. Johnson were unfounded. Johnson decl., ¶ 17. Mr. Bassler evaluated Ms. Johnson's 2013-2014 overall performance as Meets Expectations. *See* Ennis decl., Ex. D.

### 2) District 24 had Significant Challenges when Ms. Johnson Assumed Management of It in 2013.

District 24 was in relatively poor condition when she assumed management of it in 2013 (not 2015). Johnson dep., 116:21-25, 117:1-25, 118:1-11. The District had "lower volume, staffing, low profitability, and condition" opportunities (or problem areas). *Id*. The stores were old and needed repair— "they were older and beat up." *Id.* Some were dirty, had out of stock problems, and top line sales problems. *Id.* Customer satisfaction was also a problem in her newly assigned district. *Id.*

By 2016, District 24 had improved from the time Ms. Johnson assumed management of it. Johnson decl., ¶¶ 18, 19. The year 2016 was extremely challenging for Albertsons and for District 24. Schroeder dep., Ex. 60, p. 1. Even so, District 24 was enjoying some successes. For instance, Safety and Sanitation scores for District 24 were the second best in the Division. Schroeder dep., Ex. 60, p. 3. District 24's out of stocks (un-shelved product) average for the year was the second lowest in the Area 1 of the Division. Schroeder dep., Ex. 60, p.2.

### 3) Perry complaint was resolved in Ms. Johnson's favor.

Mr. Perry and Ms. Johnson worked together successfully from the time of the merge in 2015 until Robert "Rob" Backus arrived in the Division to replace Perry in February 2016. Johnson decl., ¶¶ 20,21. In February 2016, then Area 1 Vice President Joe Perry counseled Ms. Johnson about her interaction with staff. Ennis decl., Ex. E. After the counseling session in February 2016, Mr. Perry and Ms. Johnson did a two-week "ride-along" traveling to most of the stores in District

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

24. After the ride-along, Ms. Johnson met again with Mr. Perry and Vice President of Human Resources Carla Thuney. Both Mr. Perry and Ms. Thuney thanked her for spending time with Mr. Perry and being so cooperative and sharing information about her District. Johnson decl., ¶ 22. Ms. Johnson heard nothing further from Mr. Perry and they worked together successfully until he left in October 2016. Johnson decl., ¶ 23.

In July 2017, Area 1 Vice President Kenny Smith characterized Ms. Johnson's overall performance for 2016 as Meets Expectations. Johnson dep., Ex. 5; Johnson decl., ¶ 24.

## C. Robert Backus Began Systematically Eliminating Women from High-level Management Positions in the Seattle Division.

In February 2016, Robert Backus became the Senior Vice President of the Seattle Division. Backus decl., ¶ 3. Mr. Backus began systematically eliminating women from the top management ranks in the Seattle Division. Johnson decl., ¶ 25. In the spring of 2017, Mr. Backus recommended the demotion of Lori Gruber from her District Manager position to a lower rated job. Backus dep., 141:1-25, 142:1-25, 143:1,144:1-13. Ms. Gruber confided to Ms. Johnson that she was treated differently than her male peers by Mr. Backus. Johnson dep., 98:2-25, 99:1-25, 100:1-2.

Mr. Backus then focused his attention on Jackie Katanik, a District Manager in Eastern Washington. Ms. Katanik told John Ortiz, now General Manager of Operations, that Mr. Backus verbally abused her. Katanik dep., 103:4-18, 104:9-25, 105:1-19. After a spring 2017 meeting, Ms. Katanik tearfully told Ms. Johnson that she was very unhappy about the way she was treated by Mr. Backus; that she felt beat up. Katanik dep., 96:3-21; Johnson decl., ¶ 27. Next, Mr. Backus participated in the firing of Tracie Perry, the Area 2 Vice President, who worked directly under Mr. Backus. Johnson decl., ¶ 29. Although Seattle Division President Schroeder and Mr. Backus claim that Ms. Perry chose to resign, she was fired and had no opportunity to remain in her job. Schroeder dep., Morris dep., 43:21-25; 44:1-11; Ennis dep., 91:24-25, 92:1-23.

Mr. Backus also oversaw the demotion of Stephanie Kennedy, a District Manager in Alaska. Backus dep., 137:15-25, 138:1-25, 139:1-14. Ms. Kennedy told Ms. Johnson that Mr.

SUSAN B. MINDENBERGS
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

Backus put her in a position that would force her to step down. Ms. Kennedy mentioned that she was being groomed by the former Division President to be a Vice President and that Mr. Backus did not like that. Johnson dep., 100:18-25, 101:1-25, 102:1-3. In a little over a year, Seattle Division management went from five female senior managers to two. Then, in April 2018, Ms. Johnson was fired.

**D. Ms. Johnson Reported that Mr. Backus was Engaging in Gender Discrimination against Female Managers.**

Ms. Johnson was very troubled by Mr. Backus's efforts, to demote, terminate, and treat harshly female managers in the Seattle Division, especially after her conversation with Jackie Katanik in the spring of 2017. Johnson decl., ¶ 30. Ms. Johnson was also troubled about the lack of support she was receiving from Mr. Backus and Mr. Smith and the abusive way Mr. Backus treated her in front of the team that reported to her. Johnson decl., ¶ 31. Store Director Dave Carlson and Produce Operations Specialist Sean Pritchard witnessed Mr. Backus being rude, dismissive, and disrespectful toward Ms. Johnson when they toured stores. Carlson decl., ¶ 12; Pritchard decl., ¶¶ 15-16. Joel Rader, the former Produce Operations Specialist who reported to Ms. Johnson, recalls that Mr. Backus and Mr. Smith treated Ms. Johnson with "absolute contempt." Rader decl., ¶ 12. Mr. Backus and Mr. Smith refused to fill many vital vacancies in Ms. Johnson's District, many of which were assistant store manager positions. Pritchard decl., ¶ 13. Mr. Pritchard notes that he has never witnessed senior leadership deny any male manager the opportunity to fill vacancies. *Id.* Mr. Backus refused to fill the position of Center Store Operations Specialist in Ms. Johnson's District for several months—a "right hand person" for the District Manager. Pritchard decl., ¶¶ 9, 10, 11.

Beginning in the spring of 2017, Ms. Johnson began have a series of discussions with Trevor Ennis, Seattle Division Human Resources Director, about the bad treatment of female managers by Seattle Division leadership. Johnson dep., 158:13-24. Other management employees also complained. Dave Carlson contacted Mr. Ennis and Boise Corporate Human Resources Peggy

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

Jones and John Ortiz Vice President of Operations in the spring of 2017. He complained that the Seattle Division leadership team of President Karl Schroeder, Senior Vice President Robert Backus, and Area 1 Vice President Kenneth Smith were so abusive that Mr. Carlson was going to resign his more than 30-year tenure with Albertsons. Carlson decl., ¶¶ 2, 14, 16, 19, 23; Ortiz dep., 31:1-16. Ms. Johnson talked to Mr. Ortiz about Mr. Carlson's threat to resign. Johnson decl., ¶ 33. Mr. Ortiz and Ms. Johnson had several discussions about the demotions, terminations, and harsh treatment female managers were suffering at the hands of Mr. Backus. Johnson decl., ¶ 34.

Executive Vice President of Operations, Susan Morris, instructed her immediate subordinate Vice President John Ortiz to "share" Ms. Johnson's concerns with Mr. Schroeder, which he did. Ortiz dep., 60:14-25, 63:7-25, 64:1-12. Mr. Schroeder admonished Mr. Ortiz that he wanted to be told about any complaints directly. Ortiz dep., 67:6-25, 68:1-3.

Mr. Schroeder told Mr. Ortiz sometime after July 2017 that he believed Kim Johnson was behind complaints about the Seattle Division leadership team that were being conveyed to Boise Corporate management. Johnson decl., ¶ 37. Mr. Schroeder expressed skepticism when Mr. Ortiz told him that others had also complained. Mr. Schroeder responded, "That damn Kim Johnson." Johnson decl., ¶ 37. Ms. Johnson's conversations with Mr. Ortiz about gender discrimination in the Seattle Division and Mr. Schroeder's concern about these complaints occurred in late May or early June and July 2017. Johnson decl., ¶ 38; Ortiz dep., 61:22-25, 62:1.

**E. Mr. Backus Hyper-inflated the Sales Projections for District 24 after Ms. Johnson Complained about Gender Discrimination.**

**1) Sales projections dictated the percentage of labor for each store is the Districts.**

Albertsons sets sales goals for every store in the Seattle Division on a quarterly basis. Johnson decl., ¶ 39. Jeffrey Glazer, the former finance manager, confirmed that sales projections are based on a 20-week average trend of sales for each store. Glazer dep., 35:24-25, 36:1-17. If a store is trending positive by two percent for the past 20 weeks, the sales projection for that store is

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

expected to hit a two percent increase for the following quarter. *Id.* Once the basic sales projections are calculated, then other conditions are analyzed such as competition opening or closing, new departments in the store, and merchandising initiatives. Glazer dep., 35:24-25, 36:1-17, 37:9-12, 40:18-25, 41:1-3. The sales projections form the basis for the labor percentage forecasted for each store. Glazer dep., 70:15-21; Johnson decl., ¶ 40. The labor percentage dictates the amount available to pay store employees. If a district did not achieve the sales projections set by management, the district has less money to pay employees. Johnson decl., ¶ 41.

Quarter 2 began in July 2017, right after Mr. Ortiz conveyed Ms. Johnson's complaints about gender discrimination. Johnson decl., ¶ 42; Ortiz dep., 61:22-25, 62:1. Mr. Backus retaliated against Ms. Johnson by telling Finance Manager Jeffrey Glazer to "push" the sales projections for District 24 "higher than any other district in the Seattle Division." Glazer decl., ¶ 12.

Mr. Glazer testified that Mr. Backus and Mr. Smith treated Ms. Johnson differently than all the other District Managers. Glazer decl., ¶ 14. The hyper-inflated projections for District 24 adversely affected the funds available for labor. Glazer decl., ¶ 15; Ortiz dep., 83:18-24. Insufficient labor resulted in not enough employees to continuously stock shelves, to provide timely customer service, to keep up with maintenance, and to assist in the overall performance of the stores. Glazer decl., ¶ 15. Imposing these unjustified higher projections (or sales targets) on District 24 made it virtually impossible for District 24 to compete successfully with other Districts in the Division. Glazer decl., ¶¶ 16,17; Ortiz dep., 82:13-23 ("… when you get a tough sales projection, it makes it tougher to do your job"). Because of the inflated projections imposed by Mr. Backus and Ms. Smith, District 24 always appeared to be under performing when compared to the target/projections. Glazer decl., ¶ 18. Mr. Smith admitted to Mr. Glazer that the projections for Ms. Johnson's District, but when the next quarter came around, Mr. Smith and Mr. Backus again

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

imposed unrealistically projections higher than the other Districts in the Division. Glazer decl., ¶ 19; Pritchard decl., ¶ 12.

### 2) The inflated projections adversely affected the performance of District 24 in 2017.

By the fall of 2017, when District 24 was struggling with the unfilled vacancies caused by the overly inflated sales projections that cut into staffing the stores, Ms. Johnson's ranking in many respects predictably was low. Johnson decl., ¶¶ 43,44. In October 2017, Ms. Johnson met with a very angry Karl Schroeder. Johnson decl., ¶ 46. Mr. Schroeder stood over her and yelled at her claiming she was "working against" Mr. Backus and Mr. Smith and repeatedly encouraged her to quit. Johnson decl., ¶ 47. Mr. Schroeder demanded she go immediately to Human Resources and get on a performance improvement plan (PIP). Johnson decl., ¶ 48. Albertsons claims that one of the reasons Ms. Johnson was placed on a PIP was because of high turnover. The high turnover was caused by harsh treatment from Seattle Division leadership and the intentional underfunding of labor that resulted in salaried employees having to work much longer hours to make up for insufficient labor. Johnson decl., ¶ 50; Itaoka decl., ¶ 19.

When Ms. Johnson was put on a PIP, the paperwork requirements for District 24 employees increased exponentially. Rader decl., ¶ 9; Pritchard decl., ¶ 17. Instead of blaming any of her staff, Ms. Johnson interceded on their behalf to protect them from the chaos and tyranny caused by Mr. Backus and Mr. Smith. Rader decl., ¶ 14.

### 3) Store Director Staci Marshall wanted an Assistant Store Director.

Ms. Marshall did not consider quitting or a demotion because of Ms. Johnson. Ms. Marshall had health problems and considered stepping down or transferring to a less stressful store because of those reasons. Marshall dep., 44:4-7, 74:16-25, 75:1-5, 79:8-20 ("I never once said, you know, I want to transfer out of Kim's district. I wasn't happy, but I never said I wanted to transfer.") Ms.

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

Marshall was not happy because she did not have an assistant store manager. Marshall dep., 31:15-25, 32:1-2, 36:2-10. Mr. Backus blocked Ms. Johnson's efforts to fill the assistant manager position in Ms. Marshall's store and in several other stores. Pritchard decl., ¶ 13.

4) **The deli closure at store 3298 was a one-time event that Ms. Johnson immediately remedied**.

On a day in December 2017, store 3298 had a deli in very bad condition. Johnson dep., 205:18-25,206:1-4. The management team all agreed to take the deli out of service until it was cleaned and organized and ready for customer service. Johnson dep., 206:7-21. Contrary to Albertsons' claims, no other District 24 deli was taken out of service at any time during Ms. Johnson's tenure. Johnson decl., ¶ 52. Ms. Johnson immediately worked with the Store Director to ensure that the deli condition improve dramatically, which it did. Johnson decl., ¶ 53; Smith dep., Ex. 55 (2/2/18 Ecolab Audit – "the deli has huge improvements . . ."). Deli condition was an issue all district managers and store directors struggled with continuously. Johnson decl., ¶ 54.

**F. Albertsons Advertised for a Replacement Months Before Ms. Johnson was Fired.**

When she went on medical leave in December 2017, Albertsons uncharacteristically notified store directors and operations specialists that she was out. Pritchard decl., ¶ 18. In anticipation of her termination, Albertsons advertised for a replacement for Ms. Johnson when she was out on medical leave. Johnson decl., ¶59, Ex. D.

**G. Albertsons Fired Ms. Johnson Despite Significant Improvements in District 24.**

The sales projections for District 24 prepared by Mr. Backus for Quarter 4 of 2017 (December 2017 through February 2018) while Ms. Johnson was on medical leave, were much more realistic than the previous two quarters. Johnson decl., ¶ 55. By January 2018, Mr. Smith characterized Ms. Johnson's PIP progress as "Made Some Progress." Johnson decl., ¶ 56, Ex. B. District 24's customer services scores had improved significantly by January 2018. Smith dep.,

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

Ex. 40, 41, and 42. District 24's food safety and sanitation scores had improved—food safety at 83% and Sanitation at 100%. Smith dep., Ex. 48.

Division results were on April 4, 2018—the day before Ms. Johnson was fired. Johnson decl., ¶ 57. Despite the challenges in District 24 due to the inflated projections, by April 4, 2018, Ms. Johnson's District 24 made significant progress. For instance, the Customer satisfaction was calculated in percentage—Ms. Johnson's District was at 89.1%; the goal was 90%. Smith dep., Ex. 49; Johnson decl., ¶ 58, Ex. C. District 24's rankings were near the middle or better in the Division on most categories. Pritchard decl., ¶ 19. Clearly, Ms. Johnson's performance was improving despite Mr. Backus's efforts.

**H. Ms. Johnson's Male Replacement was Treated More Favorably.**

On April 5, 2018, Mr. Backus announced that Ms. Johnson was being replaced by Brett Podnar. Backus dep., Ex. 4. Mr. Backus further announced that stores were realigned between District 23 and District 24. Five new stores were added to District 24, four of which are high-performing, high volume stores. Pritchard decl., ¶ 20. Three low performing stores in District 24 were closed within weeks of Ms. Johnson's termination. Pritchard decl., ¶ 20. District 24 appeared much more profitable after Ms. Johnson's termination because of these changes to the District. *Id.*

Immediately after Ms. Johnson was fired, Store Director Carlson toured the store he managed with Mr. Backus, Mr. Smith and Ms. Johnson's replacement, Brett Podnar. Mr. Backus and Mr. Smith exuberantly told Mr. Carlson that the store rated 8 or 9 out of possible score of 10. They told him everything looked great. Carlson decl., ¶ 26. Just days before she was fired, Ms. Johnson and Mr. Carlson toured the same store in the very same condition. Virtually, nothing had changed. Yet, when Mr. Backus and Mr. Smith toured the store with Ms. Johnson, they rated the store at no more than 3. Carlson decl., ¶ 27. Mr. Rader was surprised by Mr. Backus and Mr. Smith

PLAINTIFF'S RESPONSE TO SUMMARY JUDGMENT
Case No. 2:18-cv-01678-RAJ - Page 9

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

telling him that the bakeries in several stores were "looking good" shortly after Ms. Johnson's termination. Hardly anything changed since Ms. Johnson's termination. When she was still employed, Mr. Backus and Mr. Smith claimed the stores were "failed visits." Rader decl., ¶ 18.

## III.    ARGUMENT OF COUNSEL

### A. Summary Judgment Standard.

At summary judgment, Courts must view all facts in the light most favorable to the non-moving party in determining whether a genuine issue of material fact exists. *Lindsey v. SLT Los Angeles*, LLC, 447 F.3d 1138, 1144 (9th Cir. 2005) citing *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Lindsey*, 447 F.3d at 1144 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The Ninth Circuit Court of Appeals "has set a high standard for the granting of summary judgment in employment discrimination cases." *Schnidrig v. Columbia Mach., Inc.,* 80 F.3d 1406, 1410 (9th Cir. 1996). "We require very little evidence to survive summary judgment in a discrimination case, 'because the ultimate question is one that can only be resolved through a 'searching inquiry'--one that is most appropriately conducted by the factfinder, upon a full record." *Lindsey,* 447 F.3d at 1144 (reversed summary judgment dismissal where Court concluded intentional discrimination with complex factual questions best addressed by juries) (quoting *Lam v. University of Hawai'i,* 40 F.3d 1551, 1564 (9th Cir. 1994)).

Here, Plaintiff Johnson produces substantial evidence that from the time Albertsons bought Safeway in late 2015, female management employees, including Ms. Johnson, were targeted for demotion or termination by Rob Backus. Johnson dep., 98:2-25, 99:1-25, 100:1-2, 100:18-25, 101:1-25; Katanik dep., 96:3-21, 103:4-18, 104:9-25, 105:1-19; Morris dep., 43:21-25, 44:1-11;

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

Ennis dep., 91:24-25, 92:1-23; Backus dep., 137:15-25, 138:1-25, 139:1-14, 142:1-6; Johnson decl., ¶¶ 28, 29. The evidence demonstrates that while Mr. Backus was denying Ms. Johnson support he provided to male District Managers. Once she complained about gender discrimination Mr. Backus began aggressively setting the stage to terminate her employment. Pritchard decl., ¶¶ 9, 10, 11, 13; Glazer decl., ¶¶ 12-19. Plaintiff satisfies either the "direct or circumstantial" model or the *McDonnell Douglas* model for summary judgment.

**B. Plaintiff Rejects the *McDonnell Douglas* Shifting Burden Model at Summary Judgment.**

The Ninth Circuit Court of Appeals has ruled that regardless upon which type of evidence they rely, Plaintiff has a choice of whether to utilize the *McDonnell Douglas* shifting burden framework or the "direct and circumstantial" (also known as "mixed motive") framework. *See McGinest v. GTE Service Corp.,* 360 F.3d 1103, 1122 (9th Cir. 2004) ("[W]hen responding to a summary judgment motion, the plaintiff is presented with a choice regarding how to establish his or her case. [Plaintiff] may proceed by using the *McDonnell Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the employer]"); *Dominguez-Curry v. Nevada Transp. Dept.* 424 F.3d 1027, 1039 (9th Cir. 2005) ("a plaintiff may produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant's decision, *or* alternatively may establish a *prima facie* case under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*") (emphasis original); *Pacific Shores Properties v. City of Newport Beach*, 730 F. 3d 1142, 1158 (9th Cir. 2013) ("A plaintiff does not, however, have to rely on the *McDonnell Douglas* approach to create a triable issue of fact regarding discriminatory intent in a disparate treatment case. Instead, she may 'simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated' the defendant

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

and that the defendant's actions adversely affected the plaintiff in some way"). Proof of pretext is not required in the mixed motive model. *Stegall v. Citadel Broadcasting Co.,* 350 F.3d 1061, 1067 (9th Cir. 2003) ("In mixed motive cases, . . . it does not make sense to ask if the employer's stated reason for terminating an employee is a pretext for retaliation, when the employer has offered more than one reason for the action that it took. Rather, the relevant inquiry in a 'mixed motive' case is distinct from that of a 'single motive' or pretext case"). Although Plaintiff survives summary judgment under either model, Plaintiff rejects the application of the *McDonnell Douglas* shifting burden model.

Under Washington law, Ms. Johnson is obligated to produce evidence at summary judgment that a substantial factor motivating the employer was discrimination. *Mackay v. Acorn Custom Cabinetry, Inc.,* 127 Wn.2d 302, 311-12, 898 P.2d 284 (1995), a much less onerous obligation than the determining factor requirement under federal law. "An employee may satisfy the pretext prong by offering sufficient evidence to create a genuine issue of material fact *either* (1) that the defendant's reason is pretextual *or* (2) that although the employer's stated reason is legitimate, discrimination nevertheless was a substantial factor motivating the employer." *Scrivener v. Clark College*, 181 Wn.2d 439, 446-47, 334 P.3d 541 (2014) (emphasis added).

Ms. Johnson produces circumstantial evidence to demonstrate gender discrimination motivated Albertsons' disparate treatment against her in violation of 42 U.S.C. § 2000e, Title VII. The circumstantial evidence she presents consists of Mr. Backus's swift termination and demotion of female management personnel within the first year or so of his appointment as Senior Vice President of the Seattle Division. Johnson dep., 98:2-25, 99:1-25, 100:1-2, 100:18-25, 101:1-25, 102:1-3; Katanik dep., 96:3-21, 103:4-18, 104:9-25, 105:1-19; Morris dep., 43:21-25, 44:1-11;

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

Ennis dep., 91:24-25, 92:1-23; Backus dep., 137:15-25, 138:1-25, 139:1-14, 142:1-6; Johnson decl., ¶¶ 25, 26, 27, 28, 29.

In addition, Ms. Johnson produces evidence that Mr. Backus failed to support her district when she asked to be able to fill vacancies that were vital to the successful operation of the stores she managed. Pritchard decl., ¶¶ 8, 9, 10, 11, 13, 14. Mr. Pritchard witnessed male district managers ask senior management to fill vacancies and has never heard any male manager being denied. Pritchard decl., ¶ 14.

Mr. Backus and other senior managers treated Ms. Johnson rudely, dismissively, and with contempt in front of her management team undermining her authority to do her job. Pritchard decl., ¶¶ 15, 16; Carlson decl., ¶¶ 11, 12, 13; Rader ¶ 12. Senior management's hostile conduct toward Ms. Johnson in meetings and store tours was so obvious and distressing that it was the topic of conversation among her management team when the visits were over. Carlson decl., ¶ 13; Pritchard decl., ¶ 16; Rader decl., ¶ 12. In contrast, Mr. Backus and Mr. Smith were very deferential to male employees in management roles. Carlson decl., ¶ 29. Significantly, shortly before Ms. Johnson's termination from employment one of her stores was rated by management as very poor. Yet, after the store was transferred to Brett Podnar, the same store in the same condition was rated very highly by the same managers. Carlson decl., ¶ 26-27; Rader decl., ¶ 18.

## C. Plaintiff Also Satisfies the *McDonnell Douglas* Model.

The shifting burden framework for deciding discrimination cases at summary judgment is derived from *McDonnell Douglas v. Green, supra.* It provides a *guideline* and "was never intended to be rigid, mechanized, or ritualistic." *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577 (1978). The shifting burdens framework was developed to assist Plaintiff in surviving summary judgment in recognition that discriminatory intent is often difficult to prove. *McDonnell Douglas*

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

*Corp. v. Green*, 411 U.S. at 802-03. The Supreme Court has made clear that the burden on plaintiff in establishing a *prima facie* case is "not onerous" and requires only that the plaintiff establish facts adequate to permit an inference of discrimination. *Burdine*, 450 U.S. at 253-54; *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989).

No particular *type of evidence* or *type of proof* is required to establish a violation of state or federal anti-discrimination statutes. Nor is it significant how that evidence is designated - as part of the *prima facie* case or pretext. "The ultimate question for the court in making a summary judgment determination . . . is not whether the plaintiff has produced sufficient evidence to survive the *McDonnell Douglas/Burdine* shifting burdens, but rather whether there are any genuine issues of material fact concerning the defendant's motivation for its adverse employment decision, and, if none are present, whether the law . . . supports a judgment in favor of the moving party on the basis of the undisputed facts." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008). The inflexible application of the *McDonnell Douglas* shifting burdens creates a barrier to the vindication of civil rights.

### 1) Ms. Johnson was performing her job satisfactorily until the Seattle Division leadership's intentionally hyper-inflated District 24 sales projections.

To show satisfactory job performance, an employee "need not show perfect performance or even average performance to satisfy this element. He need only show that his performance was of sufficient quality to merit continued employment, thereby raising an inference that some other factor was involved in the decision to discharge him." *Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1283 (7th Cir. 1977). *See also Gregory v. Daly*, 243 F. 3d 687, 696 (2nd Cir. 2001) (same).

Joe Perry rated Ms. Johnson's overall job performance as Meets Expectations in July 2016. Johnson dep., Ex. 3. Then a year later in 2017, Kenny Smith again rated Ms. Johnson's overall job performance as "Meets" Expectations. Smith dep., Ex. 35; Johnson decl., ¶ 24, Ex. A; see also, Schroeder dep., Ex. 60 (District 24's out of stocks and food safety were in the top ranks of the

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

Division).  The earlier complaints from Mr. Perry and Mr. Bassler were resolved satisfactorily in Ms. Johnson's favor.  Johnson decl., ¶¶ 14,15,16,17,21,22,23.  Both Mr. Bassler and Mr. Perry rated Ms. Johnson's job performance as Consistently Meets Expectations after they raised issues pertaining to her interactions with employees. Ennis decl., Ex. D; Johnson dep., Ex. 3.  The Morris complaints are not true as evidenced by the glowing performance review conducted by Ms. Johnson's immediate supervisor during that timeframe.  Ennis dep., Ex. 30.

Albertsons makes much of Ms. Johnson acknowledging that 2016 was the worst year of her career.  But they fail to mention that 2016 was the worst year for Albertsons after acquiring Safeway.  Schroeder dep., Ex. 60, Smith dep. Ex. 35 ("2016 was a very challenging year for Seattle Division with several headwinds beyond the control of district managers.")

In 2017, Ms. Johnson's performance was adversely affected by Mr. Backus and Mr. Smith intentionally hyper-inflating District 24 projections making Ms. Johnson's efforts appearing unsuccessful and causing significant labor shortages making it impossible to adequately staff the stores she managed.  Glazer decl., ¶¶ 13-19; Glazer dep., 72:15-18; Johnson decl., ¶ 39,40,41,42,43,44;  Itaoka decl., ¶¶ 14-19; Itaoka dep., 129:5-8.

Mr. Schroeder's characterizations of District 24 as filthy dirty and the worst he's seen in 42 years are self-serving and unsupported by the evidence. In deciding summary judgment, the court  "must disregard all evidence favorable to the moving party that the jury is not required to believe."  *Reeves v. Sanderson Plumbing Products, Inc*., 530 US 133, 151 (2000). The evidence from a nonmoving party can be considered only when "that evidence comes from disinterested witnesses." *Id*. A jury would not be required to believe this testimony, and Mr. Schroeder is not a disinterested witness.

Despite the challenges Mr. Backus threw at Ms. Johnson, her management team appreciated her efforts.  Mr. Carlson worked under Ms. Johnson's supervision for years; the most recent time was 2013 through 2018.  He found her to be thorough, fair, objective and supportive.

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

They worked together collaboratively. Carlson decl., ¶ 10. Mr. Rader, the Bakery Operations Specialist who reported to Ms. Johnson states that over his 20 year plus years working for the company, Ms. Johnson was the most effective supervisor he had. Rader decl., ¶ 4. Mr. Rader learned more from her in the first few months than he had in the previous 15 years. Ms. Johnson mentored Mr. Rader until her termination in April 2018. Rader decl., ¶¶ 4, 15. Mr. Rader was amazed at how calmly Ms. Johnson dealt with the horrible environment, constant criticism, and excessive work demands caused by Mr. Backus and Mr. Smith. Rader decl., ¶ 16.

By April 2018, District 24 was turning around. The sales projections given to the District by Mr. Backus and Mr. Smith were more realistic than they had been since July 2017. Smith dep., Ex. 49; Johnson decl., ¶¶ 57, 58 and Ex. C; Pritchard decl., ¶ 19. Once the hyper-inflated projections were made more realistic in January 2018, District 24 began making steady improvement. District 24's overall customer experience was above the Division average and fifth out of eleven districts. Ms. Johnson's District was at 89.1% for customer satisfaction; the goal was 90%. Smith dep., Ex. 49; Johnson decl., ¶ 58, Ex. C. Speed of checkout in District 24 was three from top out of eleven. *Id.* By March 2018, the Food Safety score for District 24 was 83%--still a challenge, but improving. Three districts' scores were below District 24. Smith dep., Ex. 48. District 24's sanitation score was 100%--at the top of the Division. *Id.*

### 2) Female managers, including Ms. Johnson, were treated differently than the ten male District Managers in the Seattle Division.

A plaintiff may show "an inference of discrimination in whatever manner is appropriate in the particular circumstances." *Hawn v. Executive Jet Management, Inc.*, 615 F.3d 1151, (9th Cir. 2010) citing *Diaz v. Am. Tel. & Tel*., 752 F.2d 1356, 1361 (9th Cir. 1985). A "plaintiff may do so through comparison to similarly situated individuals, or any other circumstances" surrounding the adverse employment action [that] give rise to an inference of discrimination." *Hawn*, 615 F. 3d at

ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

1156 (quoting *Peterson v. Hewlett Packard*, 358 F.3d 599, 603 (9th Cir. 2004)). Moreover, whether the other employees are similarly situated is a question of fact. *Hawn*, 615 F.3d at 1158 (citing *Beck v. United Food & Commercial Workers Union Local 99*, 506 F.3d 874, 885 n. 5 (9th Cir. 2007) (whether two employees are similarly situated is ordinarily a question of fact)).

Albertsons' insistence that Ms. Johnson was not similarly situated to the male District Managers in the Seattle Division because of her alleged poor performance issues is specious; they were all District Managers. The similarly situated standard "is not an unyielding, inflexible requirement that requires near one-to-one mapping between employees" because one can always find distinctions in "performance histories or the nature of the alleged transgressions." *Earl v. Nielsen Media Research, Inc.*, 658 F. 3d 1108, 1115 (9th Cir. 2011). Any alleged performance deficiencies were caused by Albertson's discriminatory and/or retaliatory animus.

Ms. Johnson's performance from 2011 until mid-2017 met the accepted standards of the company. Ennis dep., Ex. 30 (2011 Great Performer); Ennis decl., Ex. D (2014 Meets Expectations); Johnson dep., Ex. 3 (Meets Expectations), Johnson decl., ¶ 24 (2016 Meets Expectations); Schroeder dep., Ex. 60 (2016 second lowest percentage of sanitation violations in the Division; 2016 out of stocks second lowest in Area 1). Ms. Johnson produces substantial evidence that the reason her District was performing poorly in 2017 was due to retaliation from Mr. Backus in the form of hyper-inflated sales projections that adversely affected all aspects of District 24's performance metrics. Albertsons cannot first cause Ms. Johnson's District to perform poorly then claim she is not similarly situated because her District is performing poorly as compared with male managers not engaging in protected conduct. The reasoning is circular and should be rejected.

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

Rob Backus treated Ms. Johnson with "absolute contempt." Rader decl., ¶ 12, 13. Mr. Backus ignored Ms. Johnson when touring stores with her management team—was rude and dismissive toward her and rolled his eyes when she spoke. Pritchard decl., ¶ 16. This conduct had a detrimental effect not only on Ms. Johnson, but infected her management team, as well—damaging morale. *Id.* When touring Mr. Carlson's store, Seattle Division senior leadership team would physically turn their backs on Ms. Johnson when she spoke, were disrespectful, and so rude it shocked the other management employees who participated in the tours. Carlson decl., ¶ 12, 13. By comparison, male managers were treated with deference by Mr. Schroeder and Mr. Backus. Carlson decl., ¶ 29.

**3) Albertsons replaced Ms. Johnson with a male District Manager.**

Requiring plaintiffs to establish they were "replaced" by a person outside the protected class is particularly suspect where, as here, the replacement occurs after the defendant is put on notice that the plaintiff may have a discrimination claim. *See Tsai v. AT&T Mobility, LLC*, 2009 WL 666939, at *2 (W.D. Wash. March 11, 2009) (holding that when the individual who was promoted receives the challenged position only after the plaintiff has filed a discrimination charge, the fact that both individuals are members of the same protected class does not rebut the otherwise established inference of discrimination) (relying on *Diaz*, 752 F.2d at 1359–60). If the replacement element was required in this circumstance, an employer could simply hire a member of the protected class to avoid a discrimination claim. *See Diaz*, 752 F.2d at 1361 (finding plaintiff may demonstrate inference of discrimination in whatever manner is appropriate under particular circumstances, and noting "the burden of establishing a *prima facie* case is not designed to be onerous") (citations omitted).

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

Mr. Backus announced to all Seattle Division employees that Brett Podnar "replace[d] Kim as the District Manager for District 24." Schroeder dep., Ex. 58. However, even if Albertsons could persuade the Court it replaced Ms. Johnson with a female, that does not absolve the company from liability when it was on clear notice that Ms. Johnson may have a discrimination claim. From at least January 2018, Albertsons was aware that they could face liability from a lawsuit brought by Ms. Johnson. In a January 2018 email to the Chief Executive Officer Bob Miller, Ms. Johnson clearly articulated that she and other female managers had been subjected to disparate treatment by Rob Backus and other Seattle Division managers. Johnson dep., Ex. 17 ("I am writing to you . . . requesting the immediate stoppage of biased treatment of women . . . in the Seattle Division."). The day after Ms. Johnson sent the letter to Mr. Miller, Finance Director Steve Mohrweis announced to Mr. Glazer that Albertsons would have to increase the legal fees in the FY 2018 budget because of an anticipated lawsuit from Kim Johnson. Ennis dep., Ex. 32, p. 4.

**D. Ms. Johnson Produces Substantial Evidence of Retaliation to Meet her *Prima Facie* Obligation.**

"The purpose of Title VII's anti-retaliation provision is to bar employers from taking actions which could have 'a deleterious effect on the exercise of these rights by others.'" *Passantino v. Johnson & Johnson*, 207 F.3d 599, 612 (9th Cir. 2000) (citing *Garcia v. Lawn*, 805 F.2d 1400, 1405 (9th Cir. 1986)). The *Passantino* Court held that Title VII encourages employees to report actions that they reasonably believe are discriminatory, even if those actions are in fact lawful. *Passantino,* 207 F.3d at 612 (citing *Moyo v. Gomez*, 40 F.3d 982, 985 (9th Cir. 1994)). To succeed on a retaliation claim, the plaintiff need not show "that the employment practice [she opposes] actually [was] unlawful; opposition thereto is protected when it is based on a reasonable belief that the employer has engaged in an unlawful employment practice." *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2002). Here, Ms. Johnson reported what she reasonably believed

ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

to be discriminatory actions taken by Rob Backus toward female managers in Albertsons' Seattle Division. Johnson decl., ¶ 34.

### 1) Ms. Johnson's complaints to Trevor Ennis and John Ortiz about demotions, terminations, and harsh treatment of female managers constitute protected conduct.

Albertsons subjected Ms. Johnson to retaliation for complaining about gender discrimination first to Seattle Division Human Resources Director Trevor Ennis and when Mr. Ennis took no action, she complained to John Ortiz in the Boise corporate offices. The retaliatory conduct included hyper-inflating the sale projections for her District to cause it to fail, placing her on a performance improvement plan that was so onerous no District Manager could succeed, then terminating her employment even though District 24's performance was steadily improving once the hyper-inflated sales projections were lowered.

Albertsons does not appear to dispute that Ms. Johnson engaged in protected conduct. In fact, Mr. Ortiz concedes that Ms. Johnson brought complaints to his attention. Ms. Morris instructed Mr. Ortiz to "share" Ms. Johnson's concerns with Mr. Schroeder, which he did. Ortiz dep., 60:14-25. Mr. Ortiz reported Ms. Johnson's complaints about Mr. Backus to Mr. Schroeder. Ortiz dep., 63:7-25, 64:1-12. Ms. Johnson makes it clear that the complaints she reported to both Mr. Ennis and to Mr. Ortiz were about demotions, terminations, and harsh treatment female managers suffered at the hands of Rob Backus. Johnson decl., ¶ 30, 34.

It is undisputed that Seattle Division leader both knew about Ms. Johnson's complaints and that Karl Schroeder, the person who made the decision to fire Ms. Johnson, was not happy about her complaints. Mr. Schroeder told John Ortiz sometime after July 2017 that he believed Kim Johnson was behind complaints about the Seattle Division leadership team that were being conveyed to Boise Corporate management. Johnson decl., ¶¶ 35-36. Mr. Schroeder was skeptical

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

when Mr. Ortiz told him that others had also complained.  Mr. Schroeder responded, "That damn Kim Johnson."  Johnson decl., ¶ 37.

Ms. Johnson's had no performance issues prior to engaging in protected activity. District 24 was struggling in 2016, as was the entire Division. Schroeder dep., Ex. 60. But Ms. Johnson's performance was rated Meets Expectations by Mr. Smith in July 2017. Mr. Backus put Division results in a 2016 performance review demonstrating District 24 led the Division in sanitation and scored well with the second least amount of out of stocks in Area 1 of the Division. *Id.*

### 2) Ms. Johnson produces sufficient evidence to show a causal nexus between her protected conduct and the termination of her employment.

Causation may be established based on the timing of the relevant actions. "Specifically, when adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred." *Passantino*, 207 F.3d at 612 citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1375-76 (9th Cir. 1987) (finding causation based on timing of retaliation); *Miller v. Fairchild Industries, Inc.*, 885 F.2d 498, 505 (9th Cir. 1989) (holding that discharges 42 and 59 days after EEOC hearings were sufficient to establish *prima facie* case of causation). Evidence based on timing can be sufficient to defeat summary judgment, even if alternative reasons are proffered by the defendant. *Passantino*, 207 F.3d at 612.

Almost immediately upon learning of Ms. Johnson's complaints about Rob Backus's disparate treatment of female managers, Mr. Backus imposed hyper-inflated sales projections on District 24, which made it virtually impossible for District 24 to compete successfully with the other Districts in the Division. Glazer decl., ¶¶ 13-19. Then with the inevitable decline of District 24, Mr. Schroeder put Ms. Johnson on a performance improvement plan.

### E. Albertsons' Alleged Non-discriminatory Reason for Firing Ms. Johnson is Unworthy of Belief and Merely Pretext for its Retaliatory Actions Because She Engaged in Protected Conduct.

**Susan B. Mindenbergs**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

As stated above, Plaintiff rejects the McDonnell Douglas shifting burden model, and as a result does not have to prove pretext. *Stegall v. Citadel Broadcasting Co.,* 350 F.3d 1061, 1067 (9th Cir. 2003). Nevertheless, evidence of pretext bolsters her claim of both retaliation and discrimination.

Unlike the plaintiff in *Nilsson,* case relied upon by Albertsons, Ms. Johnson has specific, substantial evidence that Albertsons' claim that the reason for her termination was poor performance is unworthy of belief and/or pretext for the retaliation. In *Nilsson*, a failure to hire case, the defendant asserted that it declined to hire the plaintiff as a police officer because she failed the psychological evaluation. In response, the plaintiff offered the speculative testimony of a friend on the force that she was a "legal risk" arising presumably out of an EEOC charge against a previous employer. The Court held that rank speculation does not create a genuine issue of material fact. *Nilsson v. City of Mesa*, 503 F.3d 947, 955 (9th Cir. 2007).

Ms. Johnson's work performance was deemed by several supervisors as either exceeds or meets expectations until July 2017 when Seattle Division President learned from Susan Morris and John Ortiz, Albertsons' corporate officers, that Ms. Johnson had complained that Mr. Backus had engaged in gender discrimination. Johnson decl., ¶¶ 35-37; Ortiz dep., 63:7-25, 74:1-12. Immediately thereafter, Mr. Backus directed the Finance Manager Jeff Glazer to push Ms. Johnson's sales projections to an unjustified level that resulted in insufficient labor for the stores with the cascading results that the conditions in the stores suffered. Glazer decl., ¶ 12; Ortiz dep., 82:13-25, 83:1-2; Itaoka decl., ¶¶ 14-19; Itaoka dep., 129:5-8. Albertsons then put Ms. Johnson on an onerous, unachievable performance improvement plan. Pritchard decl., ¶ 17. After Ms. Johnson went on medical leave in December 2017, Albertsons posted her job as a vacancy and imposed much more realistic sales projections for District 24. After she returned from leave, she

ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

immediately began to make progress improving District 24. By March and April 2018, District 24 was showing marked improvement in nearly all metrics as compared with the other Districts in the Division. Johnson decl., ¶ 58, Ex. C; Pritchard decl., ¶ 19. Yet, Albertsons fired Ms. Johnson claiming her performance had not improved.

**F. Punitive Damages are available when there is Reckless Indifference to the Federally Protected Rights Plaintiff.**

In *Kolstad v. American Dental Association*, 527 U.S. 526 (1999), the Supreme Court determined the standard for awarding punitive damages under Title VII. *Id.,* at 530. The Court reaffirmed that Plaintiff must demonstrate that "the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Id.* at 529-530. The Court rejected the argument that the heightened standard for punitive damages requires that an employer's behavior be "egregious." *Id.* at 534-35. Although egregious conduct could be evidence of an intentional violation of the law, it was not a necessary element. *Id.* at 535. The defendant is appropriately subject to punitive damages if it acts "in the face of a perceived risk that its actions will violate federal law." *Id.* at 536, 119 S.Ct. 2118.

Here, Ms. Johnson and other female managers were systematically demoted or terminated upon the promotion of Rob Backus to the position of Senior Vice President. When she complained, Mr. Backus commenced a perfidious scheme to oust Ms. Johnson by unrealistically inflating her sales goals. Albertsons had no intention for Ms. Johnson to succeed in her PIP—the company advertised for applicants for her job months before the PIP was scheduled to end. Johnson decl., ¶ 58, Ex. C. These actions were taken in the perceived risk that they violated federal law. The investigative report relied upon by Albertsons is inadmissible.

ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

## IV.    MOTION TO STRIKE

Plaintiff moves to strike any reference to the Dean Report as inadmissible hearsay.   The Dean Report is replete with hearsay and double hearsay. Fed. R. Ev. 802.  Moreover, the report is a legal conclusion masquerading as a factual statement. *Sullivan v. Dollar Tree Stores, Inc.*, 623 F. 3d 770, 777 (9th Cir. 2010).  *See also Parker v. Arkansas Department of Correction*, 888 F.3d 396, 398 (Cir. 2018) (investigative report not admissible as a business record).

## V.    CONCLUSION

Ms. Johnson need only present evidence from which a jury might return a verdict in her favor. She has met that burden thereby creating a genuine issue of fact that requires a trial. *Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*, 330 F.3d 1110, 1132 (9th Cir. 2003).  For all the above reasons, Ms. Johnson respectfully requests this Court deny Defendant's motion.

DATED this 16th day of December 2019.


By: */s/ Susan B. Mindenbergs*
Susan B. Mindenbergs, WSBA No. 20545
*Attorney for Plaintiff*
Law Office of Susan B. Mindenbergs
705 Second Avenue, Suite 1050
Seattle, WA 98104
Telephone: (206) 447-1560
Facsimile: (206) 447-1523
Email: susanmm@msn.com

By: */s/ Jeffrey L. Needle*
Jeffrey L. Needle, WSBA No. 6346
*Attorney for Plaintiff*
Law Office of Jeffrey L. Needle
705 Second Avenue, Suite 1050
Seattle, WA 98104
Telephone: (206) 447-1560
Facsimile: (206) 447-1523
Email: jneedlel@wolfenet.com

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

# CERTIFICATE OF SERVICE

I, Christine A. Thomas, certify and declare that I am now and at all times herein mentioned was a citizen of the United States and resident of the State of Washington, over the age of eighteen (18) years, not a party to the above-entitled action, and am competent to testify as a witness. I am a paralegal employed with the Law Office of Susan B. Mindenbergs. On December 16, 2019, I electronically filed the foregoing Response with the Clerk of the Court using the CM/ECF system which will transmit a notification of such filing to the following participants:

D. Michael Reilly, WSBA No. 14674
Sean D. Jackson, WSBA No. 33615
Per D. Jansen, WSBA No. 49966
Beth G. Joffe, WSBA No. 42782
*Attorneys for Defendant*
LANE POWELL PC
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, WA 98111-9402
Telephone: (206) 223-7000
Facsimile: (206) 223-7107
Email: reillym@lanepowell.com
Email: jacksons@lanepowell.com
Email: jansenp@lanepowell.com
Email: joffeb@lanepowell.com

☐ Legal Messenger
☐ Facsimile
☐ Electronic Mail
☐ U.S. First Class Mail
☐ Electronic Filing/Eservice
☒ CM/ECF

The foregoing statement is made under the penalty of perjury under the laws of the United States of America and the State of Washington and is true and correct.

DATED this 16th day of December 2019.

By: */s/ Christine A. Thomas*
Christine A. Thomas, Paralegal
Law Office of Susan B. Mindenbergs
705 Second Avenue, Suite 1050
Seattle, WA 98104
Telephone: (206) 447-1560
Facsimile: (206) 447-1523
Email: christine@sbmlaw.net

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM