HONORABLE RICHARD A. JONES
TRIAL DATE: FEBRUARY 24, 2020

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KIMBERLY ANN JOHNSON,

    Plaintiff,

v.

ALBERTSONS, LLC,

    Defendant.

Case No. 2:18-cv-01678-RAJ

**PLAINTIFF'S TRIAL BRIEF**

## I.    INTRODUCTION

Plaintiff Kimberly A. Johnson filed this lawsuit in King County Superior Court on October 24, 2018 after being fired from employment by Defendant Albertsons LLC on April 5, 2018. Within thirty days of filing the complaint, Albertsons removed the case to federal court on the basis of a federal question. Ms. Johnson's lawsuit alleges gender/sex discrimination and retaliation under 42 U.S.C. § 2000e, Title VII of the Civil Rights Act of 1964, as amended in 1991 and RCW 49.60 *et seq.*, Washington Law Against Discrimination. She is seeking damages for her economic losses and emotional distress damages under state and federal law. She is seeking punitive damages for Defendant's reckless disregard of her federally protected rights under federal law.

PLAINTIFF'S TRIAL BRIEF
Case No. 2:18-cv-01678-RAJ
Page 1 of 16

SUSAN B. MINDENBERGS
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

## II.    STATEMENT OF FACTS (Abbreviated)[1]

Ms. Johnson began her employment with Defendant Albertsons in 1983. She rose through the ranks to become a District Manager overseeing the operations of between 18 and 21 stores by 2001. Ms. Johnson spent the final 17 years of her employment with Albertsons in management capacities; 15 of those years were devoted to her District Manager duties.

In December 2015, Albertsons merged with Safeway. The combined companies became known as Albertsons. Ms. Johnson was employed by Albertsons LLC from December 2015 to April 2018 when Defendant Albertsons terminated her employment.

After the merge of Albertsons and Safeway, Defendant Albertsons assigned Ms. Johnson the position of District Manager of District 24 overseeing both Albertsons and Safeway grocery stores located in North Seattle and South Everett in the Seattle Division of Albertsons. The stores she was assigned to manage were in relatively poor physical shape and the sales history was mediocre.

Shortly after the merge, Robert Backus was promoted to Senior Vice President of the Seattle Division. Mr. Backus had approximately fourteen direct reports in the operations section of his responsibilities—five of those managers were female. Within a little over a year of his promotion, Mr. Backus fired a female Area Vice President, demoted two female District Managers, and caused a third District Manager to complain that she had a "target on her back." By the late spring 2017, Ms. Johnson and Jackie Katanik were the only female District Managers in the Seattle Division.

Ms. Johnson began discussing her concerns about Mr. Backus's treatment of female managers with Human Resources Director Trevor Ennis in March 2017. Within weeks of voicing her concerns about gender discrimination to Mr. Ennis, Dave Carlson, one of Ms. Johnson's grocery Store Directors threatened to resign his 30-year career with Albertsons because of poor treatment by Seattle Division Management—especially Area Vice President Kenny Smith and Senior Vice

---

[1] The Court recently ruled on the parties' respective summary judgment motions. Plaintiff Johnson incorporates the facts recited in her response to Defendant's Motion for Summary Judgment rather than duplicating those facts in this brief. Dkt. No. 38.

PLAINTIFF'S TRIAL BRIEF
Case No. 2:18-cv-01678-RAJ
Page 2 of 16

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

President Rob Backus. Mr. Carlson contacted the corporate office in Boise, Idaho to talk to Human Resources Vice President Peggy Jones and Operations Vice President John Ortiz. Mr. Ortiz called Ms. Johnson to discuss ways to convince Mr. Carlson to continue his position as Store Director. During the conversations between Mr. Ortiz and Ms. Johnson, Ms. Johnson told Mr. Ortiz about her concerns about Rob Backus's treatment of female managers in the Seattle Division. Thereafter, Mr. Ortiz conveyed Ms. Johnson's concerns to Mr. Backus's immediate supervisor, Karl Schroeder, President of the Seattle Division of Albertsons.

Each quarter, Albertsons prepares financial projections for every grocery store in the Seattle Division. Rob Backus and Kenny Smith worked with Finance Manager Jeffrey Glazer to finalize the projections. In June 2017, after Ms. Johnson voiced her concerns about gender discrimination to Mr. Ennis, Mr. Backus and Mr. Smith instructed Mr. Glazer to "push" Ms. Johnson's store's projections 2 to 3 percent higher than the previous years' data warranted. Mr. Glazer will testify that this kind of across-the-board "push" for all stores was "extraordinary" and never happened before. The result was that Mr. Johnson's district stores suffered labor shortages, which in turn adversely affected the performance of all of the stores in her district.

In October 2017, Mr. Backus and Mr. Smith informed Mr. Schroeder of Ms. Johnson's District's poor performance. After she refused to quit, Mr. Schroeder directed that Ms. Johnson be placed on a performance improvement plan (PIP). The plan was so onerous that there was no way for her to meet all the detailed performance standards imposed on her. In January 2018, before Ms. Johnson completed the PIP, Albertsons began advertising for her replacement.

In December 2017, the projections for District 24 were much more realistic. Ms. Johnson's district's performance began to improve. Despite the improvements, Albertsons fired the 34-year veteran in April 2018.

Just days before Ms. Johnson's termination, Mr. Backus and Mr. Smith toured the grocery store managed by Mr. Carlson. They told Mr. Carlson that his store was a 3 out of 10—meaning well below the standard of 8+ that management wanted. The day after Ms. Johnson's termination,

PLAINTIFF'S TRIAL BRIEF
Case No. 2:18-cv-01678-RAJ
Page 3 of 16

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

Mr. Backus and Mr. Smith again toured the store that was in exactly the same condition as it had been when they characterized it as a 3. Now, however, both Mr. Backus and Mr. Smith enthusiastically informed Mr. Carlson that the store was an 8 or 9.

Ms. Johnson was replaced by Bret Podnar. Immediately after her termination, five new stores were placed in District 24—four of which were very high performing stores. Three under-performing stores, that Ms. Johnson had been recommending be closed for years, were closed. The result was that District 24, with realistic projections, five new stores, and the closure of poor performing stores, became a high-performing district in the Seattle Division. It is managed by a man.

### III.   ARGUMENT OF COUNSEL

**A. Sex Discrimination – Motivating Factor under Title VII.**

A sex discrimination action under Title VII may be proved by a preponderance of the evidence that can be direct or circumstantial. The U.S. Supreme Court has held that circumstantial evidence is sufficient to support a violation of Title VII. *Desert Palace v. Costa*, 539 U.S. 90, 100 (2003).

Albertsons claims that neither Ms. Johnson nor any of her female colleagues were subjected to sex discrimination. It alleges that the terminations and demotions of female managers was based on performance issues. Defendant's claim is undermined by the series of performance evaluations its management personnel completed on Ms. Johnson's performance, all of which characterize her efforts as "meets expectations" of the employer. If the jury finds that the Defendant's explanation for Ms. Johnson's termination is unworthy of belief, that would constitute circumstantial evidence of Albertsons' discriminatory animus toward female employees. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000) (this form of circumstantial evidence "may be quite persuasive"). As reflected in Plaintiff's response to summary judgment, there is more than sufficient evidence to support a finding of gender based discrimination.

PLAINTIFF'S TRIAL BRIEF
Case No. 2:18-cv-01678-RAJ
Page 4 of 16

SUSAN B. MINDENBERGS
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

**B. Gender Discrimination under the Washington Law Against Discrimination.**

In order to prevail at trial on a gender discrimination claim under the WLAD, a Plaintiff must demonstrate, by a preponderance of the evidence, that gender was a substantial factor motivating the employer's discriminatory conduct. *Scrivener v. Clark College*, 181 Wn.2d 439, 446-47, 334 P.3d 541 (2014); *see also, Mikkelsen v. Public Utility District No. 1 of Kittitas County*, 189 Wn.2d 516, 534-35, 404 P.3d 464, (2017) (summary judgment reversed on plaintiff's gender claim where 27-year veteran management female employee treated disrespectfully by new male supervisor by speaking over her in meetings, denigrating her in front of her staff and peers, calling her untrustworthy, treating her differently than male managers, was ultimately terminated from her employment).

**C. Retaliation – Reasonable Belief.**

Under both state and federal law, a Plaintiff may prove retaliation for engaging in protected conduct if he or she had a reasonable belief that the facts complained about constituted an unlawful employment practice. *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir 1994) ("The reasonableness of [Plaintiff's] belief that an unlawful employment practice occurred must be assessed according to an objective standard - one that makes due allowance, moreover, for the limited knowledge possessed by most Title VII plaintiffs about the factual and legal bases of their claims. We note again that a reasonable mistake may be one of fact or law").

Title VII encourages employees to report actions that they reasonably believe are discriminatory, even if those actions are in fact lawful. *Passantino v. Johnson & Johnson*, 207 F.3d 599, 612 (9th Cir. 2000) (citing *Moyo v. Gomez*, 40 F.3d at 985). While the Washington pattern jury instruction includes "reasonable belief" language (Washington Pattern Instruction 330.05), the Ninth Circuit Model Instruction does not (Ninth Circuit Model Instruction 10.3). Adding reasonable belief to the Ninth Circuit Model Instruction conforms with federal law.

Here, Ms. Johnson not only observed gender-based discrimination, she was told by many co-coworkers it was their experience and judgment that Albertsons had a pattern and practice of

PLAINTIFF'S TRIAL BRIEF
Case No. 2:18-cv-01678-RAJ
Page 5 of 16

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

discrimination on the basis of gender. Those conversations with co-workers support her reasonable belief that there existed gender discrimination in the workplace.

**D. Testimony about Fair Treatment for Women by Defense Managers.**

Albertsons proposes to elicit testimony from several female employees extolling the virtues and fair management treatment they have received from Seattle Division leadership, to include Karl Schroeder, Rob Backus, and Kenny Smith. Even if true, the proposed testimony would not be relevant to Ms. Johnson's claim of sex/gender discrimination under federal and state law. Ms. Johnson does not have to prove that Albertsons discriminated against *all* employees, only Ms. Johnson. *Diaz v. American Tel. & Tel.*, 752 F.2d 1356, 1361 (9th Cir. 1985) ("It is clear that Congress never intended to give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group.") (citing *Connecticut v. Teal*, 457 U.S. 440, 455 (1982). Two of the female managers whose testimony Albertsons proposes to offer at trial were placed in District Managers positions after Albertsons was apprised that Ms. Johnson claimed gender discrimination in the workplace. The *Diaz* Court addressed that issue as follows:

> When the individual who was promoted receives the challenged position only after the plaintiff has filed a discrimination charge, the fact that both individuals are members of the same protected class does not rebut the otherwise established inference of discrimination.

*Diaz*, 752 F.2d at 1361; *Tsai v. AT & T Mobility*, LLC, WL 666939, at *2 (W.D. Wash. March 11, 2009). While it is laudable that Albertsons is promoting female employees into District Manager positions, its motives are suspect since it is in the throes of litigation over gender discrimination. This testimony is irrelevant, suspect, and would be unfairly prejudicial. See Fed. R. Evid. 402, 403.

**E. Mitigation of Damages. The Defendant's Expert Report Lacks both Factual and Legal Foundation Sufficient to Support the Affirmative Defense of Failure to Mitigate Damages.**

The Defendant has offered a report from an expert witness on the affirmative defense of failure to mitigate damages. Ms. Johnson filed a motion in limine seeking to limit the testimony of

PLAINTIFF'S TRIAL BRIEF
Case No. 2:18-cv-01678-RAJ
Page 6 of 16

SUSAN B. MINDENBERGS
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

Albertsons' proposed expert, William Skilling. This was not a motion to exclude pursuant to *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993). The essence of the *Daubert* holding and their progeny is the reliability of scientific methods. *See Murray v. Southern Route Maritime SA*, 870 F.3d 915, 922 (9th Cir. 2017) (reliability depends on "whether the reasoning or methodology underlying the testimony is scientifically valid") (quoting *Daubert*, 509 at 592-93). In *Daubert*, the Court identified four factors to determine whether the underlying testimony is scientifically valid: "(1) whether the theory can be and has been tested, (2) whether the theory has been peer reviewed and published, (3) what the theory's known or potential error rate is, and (4) whether the theory enjoys general acceptance in the applicable scientific community." *Id.,* (quoting *Daubert*, 509 at 593-94, 113 S.Ct. 2786.

The Skilling report is not a scientific analysis. It is merely a compilation of national and local job categories cobbled together with internet searches leading Mr. Skilling to his unsupported opinion that Ms. Johnson failed to mitigate her damages and that she should have been employed within six months.

Approximately two months after Mr. Skilling rendered his opinion regarding Ms. Johnson's re-employment efforts in this case, Judge Coughenour excluded Mr. Skilling's expert report and testimony as insufficient "evidence to support a conclusion that there were suitable positions available for an applicant with Plaintiff's transferable skills and years of experience." *Erickson v. Biogen, Inc*., C18-1029JCC (W.D. Wash. October 19, 2019). The Court in *Erickson* found that "(b)oth the national statistics and Skilling's Indeed.com results fail to narrow their data . . . to positions that are 'substantially equivalent' to Plaintiff's previous job." *Id*., (quoting *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 232 (1982)). Mr. Skilling's proffered testimony in *Erickson* is virtually identical to that in Ms. Johnson's case. In his report about Ms. Johnson's mitigation efforts, Mr. Skilling recited Standard Occupational Classifications for six job classifications from a 2018 annual wage report published by the Bureau of Labor Statistics. Dkt. No. 51-1, p.49. He then cited what he calls "employment outlook data" published by the Washington Occupational Information

PLAINTIFF'S TRIAL BRIEF
Case No. 2:18-cv-01678-RAJ
Page 7 of 16

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

System, which "estimates" employment for 2019 in King County in those same generic job classifications he cited from the Bureau of Labor Statistics report. *Id*., p. 50. Next, he "conducted several keyword searches on www.indeed.com" using the six generic categories he was analyzing. *Id*., p. 51. He provides no specifics about the alleged employment opportunities, nor whether any of those opportunities actually existed. Mr. Skilling makes no attempt to discern the required qualifications of any of the jobs, the job duties of any job, or the compensation of any of the job. Without these essential details, Mr. Skilling presents insufficient evidence to demonstrate there were "suitable positions available for an applicant with Plaintiff's transferable skills and years of experience." *Erickson v. Biogen, Inc*., *supra.* A jury would be left to guess whether there were actually jobs Ms. Johnson could obtain (without a high school diploma), whether the duties of alleged job openings were comparable to those at Albertsons, and the amount of compensation she would have been able to realize from any such job. As in *Erickson*, Mr. Skilling's testimony is insufficient to support the affirmative defense of failure to mitigate damages, and it should be excluded.

**F. Frivolous Affirmative Defenses**.

The Defendant continues to rely upon frivolous affirmative defenses, including, good faith, *Faragher/Ellerth* affirmative defense, and legitimate, non-retaliatory reasons. *See* Dkt. No. 57, p. 4. These affirmative defenses are being presented for the improper purpose of increasing the costs of litigation and are unwarranted by existing law or by any non-frivolous argument for the extension or modification of existing law. Fed. R .Civ. P. 11(b). The Court should award monetary sanctions. Fed. R. Civ. P. 11(c).

**1. Good faith.**

Albertsons asserts that it "engaged in good faith efforts to comply with Title VII. Albertsons argues that the conduct complained of by Plaintiff, if performed or carried out, was performed or carried out in good faith based upon reasonable grounds for believing that such conduct was not in

PLAINTIFF'S TRIAL BRIEF
Case No. 2:18-cv-01678-RAJ
Page 8 of 16

SUSAN B. MINDENBERGS
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

violation of Title VII." Dkt. No. 57, p. 4. The is no qualified immunity or "good faith" defense to claims under Title VII.

To prevail, Plaintiff must simply prove that either gender discrimination or retaliation was a substantial factor under Washington law, See WPI 330.01 and 330.05, or a motivating factor under federal law. *See* Model Ninth Circuit Instruction No.10.3. Good faith is not a defense to a claim under either Title VII or the WLAD. In reference to punitive damages, Plaintiff has the burden of proof. The Ninth Circuit model instruction provides: "Conduct is in reckless disregard of the Plaintiff's rights if, under the circumstances, it reflects complete indifference to the Plaintiff's safety or rights, *or if the Defendant acts in the face of a perceived risk that its actions will violate the Plaintiff's rights under federal law.*" Model Instruction 5.5.

**2.   *Faragher/Ellerth* affirmative defense.**

Albertsons asserts as an affirmative defense that it "has in place a clear and well-disseminated policy against discrimination and retaliation, and a reasonable and available procedure for handling complaints thereof, which provides for prompt and effective responsive action. Plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities provided by Albertsons or to avoid harm otherwise." Dkt. No. 57, p. 4. This is affirmative defense is inapplicable to the Plaintiff's claims and is frivolous.

In *Burlington Industries, Inc. v. Ellerth*, 118 S. Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher v. City of Boca Raton*, 118 S. Ct. 2275, 141 L.Ed.2d 662 (1998), the Court established a two prong affirmative defense for claims of *harassment* by non-management employees*:* (a) that the employer exercised reasonable care to prevent and correct promptly any harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm. *Faragher*, 524 U.S. at 806; *Ellerth*, 524 U.S. at 765. Ms. Johnson, however, makes no claim for harassment. Moreover, only managerial employees are alleged to have violated any of Plaintiff's rights.

PLAINTIFF'S TRIAL BRIEF
Case No. 2:18-cv-01678-RAJ
Page 9 of 16

SUSAN B. MINDENBERGS
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

### 3. Legitimate, non-retaliatory reasons.

Albertsons asserts that "[a]ll employment decisions regarding or affecting Plaintiff were based upon legitimate, non-retaliatory, and reasonable business reasons that were in no way related to Plaintiff's gender or any alleged protected activity." This is not an affirmative defense.

Plaintiff has the burden to prove under Washington law that gender or retaliation was a substantial factor in the decision to take adverse action. It need not be the only factor or reason. See WPI 330.01. Under Title VII, Plaintiff must prove discriminatory or retaliatory intent played any role in a defendant's decision to terminate her employment, even if it is merely one factor and not the sole cause of the decision. 42 U.S.C. § 2000e-2(m); *National Association of African American-Owned Media v. Charter Communications, Inc.*, 915 F.3d 617, 626 (9th Cir. 2019). Therefore, a legitimate non-discriminatory or non-retaliatory reason, while relevant, is not a defense to liability. Under both state and federal law, Plaintiff can prevail if a discriminatory reason motivated the adverse employment action even if there also existed a legitimate non-discriminatory reason. Moreover, this is not an affirmative defense.

### G. Equal Opportunity Bully.

Albertsons appears to argue that Kenny Smith and maybe Rob Backus do not discriminate against female employees because of their gender, but rather because they are "equal opportunity" bullies. While it is true that Mr. Smith appears to fall into that noxious category and that Mr. Backus is imperious and supercilious, the evidence will show that their abusive conduct toward women was considerably worse than toward men.

"[I]t is error to conclude that harassing conduct is not because of sex merely because the abuser 'consistently abused men and women alike.' *E.E.O.C. v. Nat'l Educ. Ass'n. of Alaska*, 422 F.3d 840, 845-46 (9th Cir. 2005) (quoting Steiner v. Showboat Operating Co., 25 F.3d 1459, 1463 (9th Cir.1994)). The Court noted the qualitative difference in the abuse sustained by men and women in determining that the abusive conduct of the Alaska NEA director had a more substantive effect on women than men. *N.E.A of Alaska*, 422 F.3d at 846. As with the *N.E.A. of Alaska* case,

PLAINTIFF'S TRIAL BRIEF
Case No. 2:18-cv-01678-RAJ
Page 10 of 16

SUSAN B. MINDENBERGS
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

both Mr. Smith and Mr. Backus were abusive to some men, but while Mr. Backus's treatment of women included both disrespectful and disdainful conduct, he also effected both demotions and terminations of only female managers under his supervision.

**H. Fed. R. Evid. 1006.**

Albertsons proposes to introduce thousands of pages of what appear to be excel spreadsheets with summaries and graphs pursuant to Fed. R. Evid. 1006. Plaintiff has objected to all the thousands of pages of documents and the summaries as inadmissible hearsay. There is nothing inherent in the document to demonstrate that they are admissible under any exception to hearsay prohibitions. Without a demonstration that the underlying documents are admissible, the summaries are inadmissible, as well. *See United States v. Johnson*, 594 F.2d 1253, 1254-57 (9th Cir. 1979) *cert. denied*, 444 U.S. 964 (1979). ("Where summary proof is offered, ordinarily it amounts to 'evidence,' particularly where the underlying material was not itself admitted or was not as a practical matter examinable by the jury. In such cases, it is especially important to ensure that the summary rests entirely upon admissible evidence.") Fed. R. Evid. 1006 evidence normally is objectionable if the source material on which the summary is based is inadmissible. *United States v. Milkiewicz*, 470 F.3d 390, 395-96 (1st Cir. 2006) (citing 31 Charles A. Wright & Victor J. Gold, Federal Practice and Procedure § 8043, at 521-22 (2000)).

A Fed. R. Evid. 1006 proponent must show that the voluminous source materials are what the proponent claims them to be and that the summary accurately summarizes the source materials. *Milkiewicz,* 470 F.3d at 395-96 (citing 31 Wright & Gold Federal Practice § 8043, at 525). The Defendant will be unable to make the necessary showing.

**I. Untimely Pre-Trial Order Additions.**

The Proposed Pretrial Order was filed on February 10, 2020. The Defendant originally proposed 295 exhibits. On February 7, the Friday before the Pretrial Order was to be filed, the Defendant notified Plaintiff that it was withdrawing 87 exhibits. Plaintiff's counsel spent much of that weekend re-examining the exhibits to determine what exhibits were withdrawn and what

PLAINTIFF'S TRIAL BRIEF
Case No. 2:18-cv-01678-RAJ
Page 11 of 16

SUSAN B. MINDENBERGS
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

remained. The day after the parties filed the Proposed Pre-trial Order, Defendant Albertsons contacted Plaintiff's counsel asking counsel to sign off on an additional eight exhibits which comprised of thousands of more pages of excel spreadsheets and summaries to Defendant's proposed exhibits. When Plaintiff's counsel objected, Defendant merely filed the additional exhibits without either an order from the Court or an agreement of the parties in contravention of LCR 16.1(d) ("Action by the Court"). No statement of manifest injustice was filed by Defendant. Plaintiff objects to the untimely submission of thousands of pages of exhibits.

**J. The Dean Report contains an Inadmissible Legal Conclusion and is Inadmissible Hearsay and not a Business Record of Regularly Conducted Activity.**

The Dean Report dated February 18, 2018 was prepared by a private attorney in anticipation of litigation after Ms. Johnson complained to Bob Miller, the then President of Albertsons, of gender discrimination and retaliation in the workplace. Ms. Dean submitted her report to Albertsons in-house counsel and labeled it "Confidential and Privileged – Attorney Client Communication." Between the time Ms. Johnson communicated with Mr. Miller and the issuance of the Dean Report, Steve Mohrweis, Albertsons Director of Finance, had announced that Albertsons needed to increase its legal accrual because Kim Johnson was going to sue the company. Dkt. No. 40-1, p.50. Clearly, the Dean Report was commissioned in anticipation of litigation and makes the report itself and all of its conclusions untrustworthy.

Albertsons' relies *United States v. Childs* for the proposition that a business record is admissible even if prepared by a third-party vendor in its opposition to Plaintiff's motion in limine to exclude the Dean Report. *United States v. Childs*, 5 F.3d 1328, 1334 (9th Cir. 1993). While that proposition may be accurate, the holding in *Childs* does not support Aldersons' argument. In *Childs*, the defendant was accused of possession of stolen vehicles that he registered under a false name in Alberta, Canada. The trial court admitted, over the defendant's objection, license plate applications maintained by the Alberta, Canada DMV and ownership documentation maintained by the auto dealers from whom the defendant was accused of stealing. The court found these types of records

PLAINTIFF'S TRIAL BRIEF
Case No. 2:18-cv-01678-RAJ
Page 12 of 16

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

provided by a vendor to be kept in the regular course of the motor vehicle licensing business, in the regular practice of that business, and trustworthy.  *Childs*, 5 F.3d at 1334.  *See also*, *MRT Const. Inc. v. Hardrives*, 158 F.3d 478, 483 (9th Cir. 1998) (Court affirmed admission of legal bills in a breach of contract claim where business received and maintained legal bills in the regular course of business and relied on their accuracy).  In contrast, the Dean Report, a privileged communication from a outside lawyer investigating a claim of discrimination and retaliation at a time when the employer anticipated litigation.  The report is neither trustworthy nor was it maintained in the regular course of Albertsons' grocery business.

When Ms. Johnson requested all documents related to investigations of discrimination during the past five years in discovery, Albertsons objected claiming all such documents were attorney-client or work product privileged. Mindenbergs decl., Ex. A. Ultimately, Albertsons released the Dean Report because it comported with their legal strategy.  Nevertheless, the Dean Report does not meet the requirements for the records exception to the hearsay prohibition under any scenario. Moreover, the Dean report is replete with hearsay, double hearsay, opinions about the credibility of witnesses, and opinions about the ultimate fact at issue.  It invades the province of the jury.

**K. Subordinate Bias Liability of Employer.**

Where a supervisor is motivated by discriminatory or retaliatory animus that is intended by the supervisor to cause an adverse employment action, and if that act causes the adverse action, the employer is liable under the law.  *See Straub v. Proctor Hospital*, 562 U.S. 411, 422 (2011).  In *Staub*, the plaintiff's immediate supervisors had discriminatory animus because of his service in the military reserves. *Id.,* at 414.  The supervisors made false allegations against Mr. Staub to the Vice President of Human Resources, which ultimately resulted in Mr. Staub's termination from employment by the H.R. vice president, who had no bias against Mr. Staub for his military obligations. *Id.,* at 414-15.  The Court rejected defendant's cat's paw argument that the supervisors' actions had to be the singular influence in the decision to terminate Mr. Staub.  Instead, the Court

PLAINTIFF'S TRIAL BRIEF
Case No. 2:18-cv-01678-RAJ
Page 13 of 16

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

1  reasoned that the underlying USERRA statutes were similar to Title VII that requires that
2  discrimination need be a motivating factor in the adverse employment to hold the employer liable.
3  *Id*., at 417.  Moreover, the Court found that where the supervisors' conduct was discriminatory and
4  ultimately caused the adverse employment action, the employer is liable because the supervisor is
5  an agent of the employer especially where the supervisors' actions were "designed and intended" to
6  cause the adverse employment action.  *Id*., at 420.  See also, *Boyd v. Washington State Department*
7  *of Social and Health Services*, 181 Wn. App. 1, 20, 349 P.3d 864 (2015).

8  Here, it appears that Karl Schroeder, Albertsons' Seattle Division President, made the
9  decision to terminate Ms. Johnson's employment.  It is undisputed that Rob Backus, Senior V.P.,
10 made the recommendation to terminate Ms. Johnson. Although there is independent evidence that
11 Mr. Schroeder harbored retaliatory animus against Ms. Johnson for complaining about Mr. Backus,
12 the record demonstrates that Mr. Backus was the driving force behind jettisoning Ms. Johnson from
13 her 34-year employment with Albertsons.

14 Mr. Backus displayed contempt for Ms. Johnson in front of her peers and subordinates, he
15 approved the "pushing" of her sales projections to undermine her ability to adequately staff the
16 grocery stores that she managed, he engaged in the termination and demotion of all but one of the
17 female managers in the operations section of the Seattle Division under his control.  When Ms.
18 Johnson's District 24 predictably had difficulty after Mr. Backus approved the sales projections be
19 "pushed," he reported those difficulties to Mr. Schroeder.  Based on Mr. Backus's recommendation,
20 Ms. Johnson was fired.  These facts implicate the quintessential "subordinate bias liability" theory.
21 Even if Mr. Schroeder had no discriminatory or retaliatory bias, Albertsons is liable so long as Mr.
22 Backus's intended that his recommendation would result in Ms. Johnson's termination.

### IV.   CONCLUSION

24 Albertsons engaged in discrimination and retaliation against Ms. Johnson in violation of 42
25 U.S.C. § 2000e, Title VII to the Civil Rights Act of 1964, as amended in 1991 and the Washington
26 Law Against discrimination.  She is seeking compensations for the damages caused to her.

PLAINTIFF'S TRIAL BRIEF
Case No. 2:18-cv-01678-RAJ
Page 14 of 16

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

DATED this 18th day of February 2020.

By: */s/ Susan B. Mindenbergs*
Susan B. Mindenbergs, WSBA No. 20545
*Attorney for Plaintiff*
Law Office of Susan B. Mindenbergs
705 Second Avenue, Suite 1050
Seattle, WA 98104
Telephone: (206) 447-1560
Facsimile: (206) 447-1523
Email: susanmm@msn.com

By: */s/ Jeffrey L. Needle*
Jeffrey L. Needle, WSBA No. 6346
*Attorney for Plaintiff*
Law Office of Jeffrey L. Needle
705 Second Avenue, Suite 1050
Seattle, WA 98104
Telephone: (206) 447-1560
Facsimile: (206) 447-1523
Email: jneedlel@wolfenet.com

PLAINTIFF'S TRIAL BRIEF
Case No. 2:18-cv-01678-RAJ
Page 15 of 16

SUSAN B. MINDENBERGS
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM

## CERTIFICATE OF SERVICE

I, Christine A. Thomas, certify and declare that I am now and at all times herein mentioned was a citizen of the United States and resident of the State of Washington, over the age of eighteen (18) years, not a party to the above-entitled action, and am competent to testify as a witness. I am a paralegal employed with the Law Office of Susan B. Mindenbergs. On February 18, 2020, I electronically filed the foregoing Plaintiff's Trial Brief with the Clerk of the Court using the CM/ECF system which will transmit a notification of such filing to the following participants:

| | |
|---|---|
| D. Michael Reilly, WSBA No. 14674<br>Sean D. Jackson, WSBA No. 33615<br>Beth G. Joffe, WSBA No. 42782<br>David G. Hosenpud, *pro hac vice*<br>LANE POWELL PC<br>1420 Fifth Avenue, Suite 4200<br>P.O. Box 91302<br>Seattle, WA 98111-9402<br>Telephone: (206) 223-7000<br>Facsimile: (206) 223-7107<br>Email: reillym@lanepowell.com<br>Email: jacksons@lanepowell.com<br>Email: joffeb@lanepowell.com<br>Email: hosenpudd@lanepowell.com<br>*Attorneys for Defendant* | ☐ Legal Messenger<br>☐ Facsimile<br>☐ Electronic Mail<br>☐ U.S. First Class Mail<br>☐ Electronic Filing/Eservice<br>☒ CM/ECF |

The foregoing statement is made under the penalty of perjury under the laws of the United States of America and the State of Washington and is true and correct.

DATED this 18th day of February 2020.

By: */s/ Christine A. Thomas*
Christine A. Thomas, Paralegal
Law Office of Susan B. Mindenbergs
705 Second Avenue, Suite 1050
Seattle, WA 98104
Telephone: (206) 447-1560
Facsimile: (206) 447-1523
Email: christine@sbmlaw.net

PLAINTIFF'S TRIAL BRIEF
Case No. 2:18-cv-01678-RAJ
Page 16 of 16

**SUSAN B. MINDENBERGS**
ATTORNEY AT LAW
705 SECOND AVENUE, SUITE 1050
SEATTLE, WA 98104
TEL: (206) 447-1560; FAX: (206) 447-1523
SUSANMM@MSN.COM