1

The Honorable Richard A. Jones

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

KIMBERLY ANN JOHNSON,

9

Plaintiff,

10

v.

11

ALBERTSONS LLC,

12

Defendant.

Case No. 2:18-01678-RAJ

**ORDER ON POST-TRIAL MOTIONS**

13

14     This matter is before the Court on Defendant's motion for a new trial, or

15 alternatively, remittitur of the jury award (Dkt. # 101), Plaintiff's motion for attorneys'

16 fees (Dkt. # 104), and Plaintiff's motion for adverse tax consequences and pre-judgment

17 interest (Dkt. # 119).

18                           **I.    BACKGROUND**

19     Plaintiff Kimberly Ann Johnson ("Plaintiff" or "Ms. Johnson") brought this

20 action against Defendant Albertsons ("Defendant" or "Albertsons") asserting gender

21 discrimination and retaliation claims under Title VII and Washington's Law Against

22 Discrimination ("WLAD").  On March 6, 2020, a jury returned a verdict in favor of Ms.

23 Johnson on both the Title VII and WLAD retaliation claims, but not the gender

24 discrimination claims.  Dkt. # 99.  Ms. Johnson was awarded $375,000 in past economic

25 damages ("back pay"), $750,000 in emotional distress damages, $1,500,000 in future

26 economic damages ("front pay"), and $10,000,000 in punitive damages.  *Id.*  Albertsons

27

ORDER-1

now moves for a new trial or remittitur of damages.  Dkt. # 101.  Plaintiff moves for attorneys' fees, costs, prejudgment interest, and a tax gross up.  Dkt. ## 119, 104.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 59, a "court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ."  Rule 59 "does not specify the grounds on which a motion for a new trial may be granted," instead, incorporating "those grounds that have been historically recognized."  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003)).  This includes claims that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving."  *Id.* (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).  Within the Ninth Circuit, a trial court may grant a new trial "only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice."  *Id.*  (quoting *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n. 15 (9th Cir. 2000)).

On a Rule 59 motion, a district court has "the duty . . . to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence."  *Molski*, 481 F. 3d at 729 (internal citations and quotations omitted).  "The judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party" in ruling on a motion for a new trial.  *Landes Const. Co., Inc. v. Royal Bank of Canad*a, 833 F.2d 1365, 1371 (9th Cir. 1987).

ORDER-2

### III.     DISCUSSION

**A. <u>Motion for a New Trial</u>**

Albertsons argues that a new trial is warranted because: (1) the Court erred in excluding certain evidence undermining the trial's fairness and, (2) the verdict was against the "clear weight" of the evidence.

### i.     <u>Partial Exclusion of Rebecca Dean Report and Testimony</u>

Before the trial, the Court limited the testimony and report of defense witness Rebecca Dean, an outside investigator retained by Albertsons to investigate Ms. Johnson's claims of gender discrimination prior to her termination.  Dkt. # 72 at 2-3. Specifically, the Court concluded that, in addition to other admissibility issues, the probative value of the report was outweighed by the danger of unfair prejudice and the risk that the jury might be tempted to consider the report as "substantive proof of an absence of gender discrimination, rather than merely evidence of Albertsons' state of mind." Dkt. # 72 at 3 (citing Fed. R. Evid. 403).  After a motion for reconsideration, the Court agreed to allow Ms. Dean to testify, with a limiting instruction (Dkt. # 94), that she investigated Ms. Johnson's allegations, the findings of her investigation, and that she shared her findings with Albertsons.  Dkt. # 86.  Albertsons now argues that the Court erred in limiting the admissibility of Ms. Dean's report and testimony, resulting in unfair prejudice to Albertsons.

As an initial matter, Ms. Dean's report contained hearsay, double hearsay, and legal conclusions and opinions, even though Ms. Dean was not being offered as an expert witness.  Assuming, for the sake of argument, that Albertsons could have overcome these admissibility challenges, the Court does not believe that the limitations imposed on Ms. Dean's testimony and report resulted in a "miscarriage of justice" necessitating a new trial.

Albertsons argues that Ms. Dean's testimony was necessary to challenge Ms. Johnson's testimony regarding the "facts and standards necessary to ensure food safety"

ORDER-3

and Ms. Johnson's characterization of her performance.  Dkt. # 101 at 3.  But Albertsons introduced the testimony of several witnesses that Ms. Dean spoke with during her investigation who had the opportunity to do exactly that.  And, to the extent that Albertsons contends that Ms. Dean's testimony was necessary to show Albertsons' state of mind and the reasonable actions it took upon learning of Ms. Johnson's allegations, Ms. Dean was permitted to testify that she investigated Ms. Johnson's allegations, the findings of her investigation, and that she shared her findings with Albertsons.

Errors in evidentiary rulings only warrant a new trial when the ruling "substantially prejudiced" the moving party.  *Harper v. City of Los Angeles*, 533 F.3d 1010, 1030 (9th Cir. 2008).  Because Albertsons was not "substantially prejudiced" by the Court's ruling, Albertsons' motion for a new trial on this basis is **DENIED**.

### i.   Verdict Against Weight of Evidence

Albertsons next argues that the "weight of the evidence" clearly supported a defense verdict.  Dkt. # 101 at 3-4.  To vacate the jury's verdict, this Court must find that the verdict "is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial judge, a miscarriage of justice."  *Hanson v. Shell Oil Co.*, 541 F.2d 1352, 1359 (9th Cir. 1976), *cert. denied*, 429 U.S. 1074 (1977) (quoting *Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 246, 256 (9th Cir. 1957), *cert. denied*, 356 U.S. 968 (1958)); *William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.*, 668 F.2d 1014, 1027 (9th Cir. 1981), *cert. denied*, 459 U.S. 825 (1982).  While the trial court may weigh the evidence and credibility of the witnesses, the court is not justified in granting a new trial "merely because it might have come to a different result from that reached by the jury."  *Wilhelm v. Associated Container Transportation (Australia) Ltd.*, 648 F.2d 1197, 1198 (9th Cir. 1981).

ORDER-4

According to Albertsons, Ms. Johnson presented "no evidence" that Mr. Schroeder's decision to terminate her employment had anything to do with her complaints of gender discrimination. Dkt. # 101 at 4. Instead, Albertsons argues, the clear weight of the evidence supported its claims that Ms. Johnson was terminated due to her "poor performance" and failure to satisfy the PIP requirements. *Id.* But Albertsons' summary of the evidence minimizes the weight of Ms. Johnson's evidence of retaliation.

First, Albertsons discounts the testimony of Ms. Johnson that her concerns of gender discrimination were communicated to Mr. Schroeder prior to her email to Bob Miller in January 2018. Dkt. # 103 at 181:16-182:19. Ms. Johnson also offered evidence of Mr. Schroeder's general animus towards her, including her account of a contentious meeting with Mr. Schroeder in October 2017. *See* Dkt. # 108 at 202:2-24. It was not unreasonable for the jury to infer that Ms. Johnson's termination was motivated by retaliatory animus. Albertsons also conveniently disregards testimony that after Ms. Johnson raised her complaints of discrimination, her sales projections were pushed across all her stores. Dkt. # 105 at 78:14-79:24. Finally, Albertsons omits the testimony of Sean Pritchard that before Ms. Johnson's termination Mr. Backus gave one of her stores a very low inspection grade, but shortly after her termination, Mr. Backus gave that same store, now under the supervision of Brett Podnar, a high score even though the conditions had not changed. Dkt. # 108 at 23:22-24:19; Dkt. # 106 at 92:24-93:10.

On this record, the Court cannot find that the jury's verdict was "contrary to the weight of the evidence." *Roy v. Volkswagen of Am., Inc.,* 896 F.2d 1174, 1176 (9th Cir.), *opinion amended on denial of reh'g*, 920 F.2d 618 (9th Cir. 1990). Albertsons' motion for a new trial on this basis is **DENIED**.

ORDER-5

**B. Motion for Remittitur**

Ms. Johnson was awarded $375,000 in past economic damages, $750,000 in emotional distress damages, $1,500,000 in future economic damages ("front pay"), and $10,000,000 in punitive damages. Albertson asks the Court to remit the front pay, emotional distress, and punitive damages awards. Dkt. # 101 at 5. The Ninth Circuit has held that a jury award should be upheld "unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996). In Washington, courts are authorized to order a new trial only if the damages awarded are: (1) the result of "passion or prejudice," (2) outside the range of substantial evidence in the record, or (3) "shock the conscience" of the court. *See* RCW 4.76.030; *Green v. McAllister*, 103 Wash. App. 452, 462, 14 P.3d 795 (2000).

A trial court reviewing a damages award attacked as excessive must consider the evidence of damages in a light most favorable to the prevailing party. *Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385, 1387 (9th Cir. 1987), *amended on other grounds by*, 817 F.2d 609 (9th Cir. 1987). The court should not substitute its judgment for that of the jury, but instead reduce the judgment to the maximum amount sustainable by the proof. *D & S Redi–Mix v. Sierra Redi–Mix & Contracting Co.*, 692 F.2d 1245, 1249 (9th Cir. 1982) (citations omitted). If the court determines that the damages award is excessive it may reduce the award, with consent of the plaintiff. *See Fenner v. Dependable Trucking Co.*, 716 F.2d 598, 603 (9th Cir. 1983); *Green*, 103 Wash. App. at 462, 14 P.3d 795.

   i. <u>Front Pay</u>

The purpose of an award of front pay is to make a victim of discrimination or retaliation whole, but this must be tempered by what she could earn using reasonable mitigation efforts. *Gotthardt v. Nat'l R.R. Passenger Corp.*, 191 F.3d 1148, 1157 (9th Cir. 1999). Thus, front pay is intended to be temporary in nature. *Cassino v. Reichhold*

ORDER-6

*Chemicals, Inc*., 817 F.2d 1338, 1347 (9th Cir. 1987).  "Because of the potential for windfall, front pay's use must be tempered."  *Gotthardt v. Nat'l R.R. Passenger Corp*., 191 F.3d 1148, 1157 (9th Cir. 1999) (internal citation and quotations omitted). The longer the period of front pay, the more speculative the damages become.  *Peyton v. DeMario*, 287 F.3d 1121, 1128 (D.C. Cir. 2002).

Under Title VII, front pay is an alternative to the equitable remedy of reinstatement, and thus is within the discretion of the court.  *Pollard v. E.I. du Pont de Nemours & Co*., 532 U.S. 843, 854 n.3 (2001).  In contrast, under Washington law, the calculation of front pay is a jury issue, and a court may reduce a jury's damages award, but only with the plaintiff's consent.  *Green v. McAllister*, 14 P.3d 795, 801 (Wash. App. Ct. 2000); *see also Passantino*, 212 F.3d at 510.  Here, the jury awarded Ms. Johnson $1,500,000 in front pay.  Albertsons asks the Court to remit the award to no more than three years of front pay, arguing that the jury award is grossly excessive. Dkt. # 101 at 8.

What troubles this Court most is the lack of evidence supporting Plaintiff's requested economic damages.  At trial, Plaintiff did not offer any expert testimony regarding her projected future economic losses, relying solely on her own testimony regarding her compensation while employed at Albertsons and her efforts to find "comparable" employment.  During closing statements, Ms. Johnson's counsel argued that she was entitled $ 3,436,728 in front pay, or 16.9 years.  Dkt. # 161 at 205:11–21. In doing so, counsel asked the jury to assume that Ms. Johnson would have continued working for Albertsons, receiving the same salary, to the age of 70 and that Ms. Johnson would not be able to find any comparable employment for the duration of her working life.

The Court finds the claim that Ms. Johnson will never be able to find a comparable position, or any position for that matter, entirely unsupported by the record. Plaintiff did not introduce any evidence to show that Ms. Johnson would have continued

ORDER-7

working for Albertsons for the next 7–17 years or that she is incapable of finding comparable employment for *at least* seven more years.  And while the Court does not contest the jury's finding that Ms. Johnson appropriately mitigated her damages, Albertsons' expert witness, William Skilling, also testified that Ms. Johnson's extensive professional experience and transferable skills qualified her for several types of positions.  Dkt. # 115 at 132:19–23.

On this record, the Court finds that the jury's $1,500,000 award is purely speculative and well outside the range of substantial evidence.  Thus, the Court will remit the front pay award to three years.  This is consistent with Ms. Johnson's age, experience, and training.  Additionally, because Ms. Johnson received back pay for a period of nearly two years, an additional three years of front pay gives her roughly five years to mitigate her damages.  *See Erickson v. Biogen, Inc*., No. C18-1029-JCC, 2020 WL 885743, at *4 (W.D. Wash. Feb. 24, 2020) (remitting front pay award to three years in WLAD and Title VII case); *Hill v. GTE Directories Sales Corp*., 71 Wash. App. 132, 139 (1993) (affirming remittitur of economic damages where jury award was "outside the range of the evidence."). *Rookaird v. Bnsf Ry. Co*., No. C14-176RSL, 2016 WL 8260464, at *9 (W.D. Wash. Sept. 2, 2016), *aff'd in part, vacated in part, remanded*, 908 F.3d 451 (9th Cir. 2018) (reducing front pay award to two years); *Glenn-Davis v. City of Oakland*, No. C 02-2257 SI, 2008 WL 410239, at *4 (N.D. Cal. Feb. 12, 2008) (awarding three years of front pay).

The Court hereby **REMITS** the front pay award to $610,200 and **DENIES** Defendant's request for a new trial on damages, conditioned on Plaintiff's acceptance of the remittitur.

ii.   <u>Non-Economic Damages</u>

Albertsons also asks the Court to remit the jury's $750,000 award for emotional distress damages.  Specifically, Albertsons contends that Ms. Johnson's testimony, corroborated only by her sister and daughter, was the sole evidence presented to the jury

concerning her emotional distress, and that the jury's award was outside the range of the evidence.  Dkt. # 101 at 11.  The Court agrees.

Substantial emotional distress damages awards need not be supported by "objective" evidence.  Instead, subjective testimony of the plaintiff, corroborated by others (including relatives), may be sufficient.  *See Passantino*, 212 F.3d at 513–14; *Bunch v. King County Dept. of Youth Servs.*, 155 Wn.2d 165, 181 (2005).  Likewise, the emotional distress need not be "severe" to support a jury's award for emotional damages.  *Zhang v. Am. Gem. Seafoods, Inc.,* 339 F.3d 1020, 1040 (9th Cir. 2003); *see also Passantino*, 212 F.3d at 513 ("Washington law contains no severity requirement as a precondition to awarding compensatory damages.").  That said, the award must still be supported by the injury suffered.  *See Hill v. GTE Directories Sales Corp.*, 71 Wash. App. 132, 140 (1993) ("Damages need not be proved with mathematical certainty but must be supported by competent evidence.") (citing *Rasor v. Retail Credit Co.*, 87 Wash. 2d 516, 530–31 (1976).

At trial, Plaintiff testified, and her sister and daughter corroborated, that she experienced distress as a result of Albertsons' retaliatory conduct.  Ms. Johnson testified that she was humiliated and suffered a loss of self-esteem.  Ms. Johnson's sister described Ms. Johnson as "broken."  On this basis, the jury awarded Ms. Johnson $750,000 in emotional distress damages.  Although the Court agrees that the evidence was sufficient to support an award of emotional distress damages, the ultimate award of $750,000 is grossly excessive and outside the range of the evidence.  First, the period in which the retaliatory conduct occurred was relatively short.  Second, while the Court does not wish to discount Ms. Johnson's suffering, the evidence presented at trial supports only a "garden variety" emotional distress claim.  *Hill v. GTE Directories Sales Corp.*, 71 Wash. App. 132, 140, 856 P.2d 746, 751 (1993) (reducing excessive emotional distress damages award in light of "meager evidence."); *Paul v. Asbury Automotive Group, LLC,* 2009 WL 188592 (D. Or. Jan. 23, 2009) (remitting awards of

ORDER-9

$1.9 million and $2.1 million to $150,000 each); *Longfellow v. Jackson Cty.*, 2007 WL 682455, at *2-3 (D. Or. Feb. 28, 2007) (remitting emotional distress damages award from $360,000 to $60,000).  Accordingly, the Court hereby **REMITS** the non-economic damages award to $200,000 and **DENIES** Defendant's request for a new trial on damages, conditioned on Plaintiff's acceptance of the remittitur.

       iii.   Punitive Damages

Punitive damages are available under Title VII to prevent and remediate unlawful conduct.  *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 545–46 (1999).  Punitive damages may be awarded in discrimination cases where the plaintiff shows that the employer knowingly or recklessly acted in violation of federal law.  *Id.*; 42 U.S.C. § 1981a(b)(1).  Thus, a plaintiff must show that when the employer fired her, it acted "in the face of a perceived risk that its actions will violate federal law."  *Kolstad*, at 536.  Even if the plaintiff makes this showing, the employer may nonetheless escape punitive damages if it can show that the challenged actions were not taken by senior managers and were contrary to the employer's good faith implementation of an effective antidiscrimination policy.  *Id.* at 546.

The parties appear to agree that federal law caps Ms. Johnson's punitive damages award at $300,000.  Dkt. # 101 at 13; Dkt. # 102 at 13.  Albertsons asks the Court to reduce this amount to $0 on the grounds that there is "no evidence" to support a finding of "malice or reckless indifference" on the part of Albertsons.  Dkt. # 101 at 13.  Albertsons makes much of the fact that Mr. Schroeder was apparently unaware of any of Ms. Johnson's complaints of gender discrimination prior to her January 2018 email to Bob Miller and that shortly after learning of the email, Albertsons retained Rebecca Dean to perform an investigation into Ms. Johnson's complaints.  Dkt. # 101 at 13.  But this is not the silver bullet Albertsons seems to believe it is.

First, the question of when Mr. Schroeder became aware of Ms. Johnson's complaints was disputed at trial with both sides offering conflicting testimony on this

issue.  Second, it is entirely possible that the jury could have concluded that Albertsons'

decision to retain Ms. Dean was merely a means to shield itself from future liability.

*Swinton v. Potomac Corp.*, 270 F.3d 794, 815 (9th Cir. 2001) ("A jury would, of course,

be free to discount such evidence on the grounds that the remedial action undertaken by

the employer is nothing but a sham concocted by defense attorneys as a strategy to

avoid punitive damages.").  Overall, while this Court might have reached a different

result, there was a basis for the jury to find that Albertsons acted in the face of a

perceived risk that it was violating federal law by firing Ms. Johnson in retaliation for

reporting gender discrimination.  *See Kolstad*, 527 U.S. at 546.

Because Albertsons has not established that the punitive damages award was

grossly excessive or unsupported by the evidence, Albertsons' request to remit the

punitive damages award to zero is **DENIED**.  The Court hereby **REMITS** the punitive

damages award to the statutory cap of $300,000.

### C. Motion for Attorneys' Fees

Plaintiff seeks an award of attorneys' fees and costs in the amount of

$1,051,989.63.  Dkt. # 104 at 2.  Plaintiff also requests a "contingency multiplier" of

2.0, increasing the award to $1.947.43938.  Dkt. # 104 at 8.  Finally, Plaintiff requests

an additional 64.55 hours in connection with litigating these post-trial motions.  Dkt. #

129 at 7.

A district court employs a two-step process to calculate a reasonable fee award.

*Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). First, the court calculates

the lodestar figure, which represents the number of hours reasonably expended on the

litigation multiplied by a reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424,

433 (1983).  Second, the court determines whether to increase or reduce that figure

based on several factors that are not subsumed in the lodestar calculation.  *See Kelly v.*

*Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016); *see also Kerr v. Screen Guild Extras,*

*Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).  The lodestar figure is presumed reasonable. *Van*

ORDER-11

*Gerwen v. Guarantee Mut. Life Co*., 214 F.3d 1041, 1045 (9th Cir. 2000); *Pham v. City of Seattle*, 159 Wash.2d 527, 151 P.3d 976 (2007) (equivalent process under state law).

         i.    <u>Reasonableness of Hourly Rate</u>

Determining a reasonable hourly rate requires the Court to consider the attorney's usual fee, the attorney's level of skill and experience, the amount of the recovery, and the "undesirability of the case." *Bowers v. Transamerica Title Ins. Co*., 100 Wash.2d 581 (1983). The Court can also consider the customary hourly rates in the local area, the effect of the case on the attorney's availability for other work, whether the case is particularly complex or difficult, and a host of other factors. The Court may also rely on its own knowledge and experience regarding fees charged in the area in which it presides. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Albertsons summarily asserts that the hourly rates claimed by Plaintiff's counsel "far outstrip[]" even the maximum range of a reasonable rate for a "partner-level counsel." Dkt. # 123 at 10. However, based on Plaintiff's expert declaration, this Court's familiarity with legal fees in the Western District of Washington, and other similar court awards, the Court finds counsel's hourly rates to be reasonable. *Erickson v. Biogen, Inc*., No. C18-1029-JCC, 2020 WL 885743, at *8 (W.D. Wash. Feb. 24, 2020) (noting an experienced plaintiff's lawyer practicing employment law in the Seattle area charges between $525 and $650 per hour).

         ii.    <u>Reasonableness of Hours</u>

As with the hourly rate, the party seeking fees has the "burden of showing the time spent and that it was reasonably necessary to the successful prosecution of" the case. *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc*., 886 F.2d 1545, 1557 (9th Cir. 1989). This requires evidence supporting the requested hours. *Hensley*, 461 U.S. at 433. The court excludes those hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. "The

ORDER-12

essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

Recognizing that the district court is generally in the best position to determine reasonable fees and that multi-year litigation necessarily causes duplication of effort, the Ninth Circuit approves of "across-the-board" percentage cuts in the number of hours or final figure when appropriate. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112–13 (9th Cir. 2008); *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992) ("[W]hen faced with a massive fee application the district court has authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming fat from a fee application.").

Plaintiff's counsel states that they spent 1,681 hours on this case, for a total of $1,069,225.25. *See* Dkt. ## 107, 110. Albertsons argues that the fee award should be dramatically reduced because many of the entries are excessive, duplicative, or bill for time that is not reimbursable. *See generally* Dkt. # 123. The Court agrees that some reductions are necessary.

### 1.  *Excessive or duplicative entries*

As an initial matter, the Court has concerns regarding the amount of time spent on many of the tasks. For example, the billing records indicate that Plaintiff's counsel (two attorneys) spent over 70 hours on motions *in limine*, approximately 115 hours responding to Albertsons' motion for summary judgment, and over 90 hours on trial exhibits (not including substantial paralegal review). *See generally* Dkt. # 107-1, Dkt. # 110-1. Additionally, several of the time entries appear duplicative and inefficient. Many of the documents reviewed by Ms. Mindenbergs appear to have also been reviewed by her paralegal, although often it is difficult to tell given the extensive block-billing (discussed below). *See e.g.,* Dkt. # 107-1 at 5; Dkt. # 107-1 at 24-25. For example, Ms. Mindenbergs and her paralegal both spent a considerable amount of time reviewing trial exhibits. *Compare* Dkt. # 107-1 at 31 *and* Dkt. # 107-1 at 13; *see also*

Dkt. # 107-1 at 19; Dkt. # 107-1 at 2 (duplicate entries for researching Albertsons and Safeway).  And it appears that Mr. Needle and Ms. Mindenbergs also spent a significant amount of time "digesting" the same depositions.  *See e.g.,* Dkt. 107-1 at 5 (Mindenbergs entry for digesting Ennis deposition); Dkt. 110-1 at 8 (Needle entry for digesting Ennis deposition); Dkt. # 107-1 at 5-6 (Mindenbergs block-billed entries for digesting Backus deposition); Dkt. # 110-1 at 8 (Needle entries for digesting Backus deposition).

After a cumulative review of the lengthy billing records, the Court is convinced that counsel could have spent substantially less time on many of these tasks if they had made reasonable efforts to work efficiently and reduce duplicative work.  Accordingly, Court finds it necessary to reduce Ms. Mindenbergs requested hours to 919.45 and Mr. Needle's requested hours to 553.13.   The Court believes this will adequately compensate counsel for their work on this case while addressing the above concerns.

### 2.   *Travel time*

Counsel also seek their full hourly rate in connection with travel time.  Mr. Needle billed several hours for travel to and from the courthouse during trial (Dkt. # 110-1 at 9), while Ms. Mindenbergs billed several hours for travel to and from meetings or depositions (Dkt. # 107-1 at 9, 13).  For each of these entries, there is no indication that substantive work was performed.  *Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, No. C17-541RSM, 2018 WL 5013764, at *8 (W.D. Wash. Oct. 16, 2018) (reducing fee award where billing records did not indicate that substantive work was performed during travel time).  Since Plaintiff's counsel has not pointed to travel time wherein legal work was performed, the travel time entries will be compensated at half the rate.

### 3.   *Clerical work*

Albertsons next seeks to exclude several "clerical" entries, including all paralegal hours at trial.  Dkt. # 123 at 13.  A court can award fees where a paralegal performs legal (as opposed to clerical) work, does so under the supervision of an attorney, and is

ORDER-14

qualified "to perform substantive legal work."  *Absher Constr. Co. v. Kent Sch. Dist.*, 79 Wash. App. 841, 917 P.2d 1086, 1088 (1995).  Paralegals (and attorneys) are not entitled to compensation for nonlegal work.  *See id*. at 1089 (denying compensation for time spent preparing pleadings, preparing copies, and similar tasks; granting compensation for "time spent preparing the briefs and related work").

A review of the time entries shows that many of the entries are either explicitly for clerical work or give the court no basis to determine that the paralegal in question performed legal work.  For example, Plaintiff seeks compensation for tasks like "preparing exhibits," "organize exhibits," "update exhibits," "reorganizing discovery file," "prep Johnson Exhibit Book," and "make copies of ESI documents."  *See generally* Dkt. # 107-1; Dkt. # 110-1.  Plaintiff also seeks fees for her paralegal to attend courtroom technology training.  Dkt. # 107-1 at 32.  This problem is intensified by the use of "block-billing."  For example, one entry for 5.5 hours states: "[c]ontinue preparing declaration; extract deposition pages for exhibits; start preparing notebook for judge; update Response to Motion."  Dkt. # 107-1 at 30.  This makes the Court's review of the amount of time spent on particular activities more difficult and justifies a reduction of the hours billed.  *Welch v. Metro. Life Ins. Co.,* 480 F.3d 942, 946 (9th Cir. 2007).  After review of the paralegal entries, the Court finds that approximately 50% of them describe time spent on non-legal work or on work that the court cannot determine is legal.  Accordingly, the Court will reduce the requested paralegal fees by 50% to $69,812.75.

iii.    Discount for unsuccessful claims

Where a plaintiff succeeds on only some of her claims, the court must consider (1) whether the unsuccessful claims were related to the claims on which she succeeded, and (2) whether the plaintiff achieved "a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award."  *Schwarz v. Sec'y of Health & Human Servs*., 73 F.3d 895, 901 (9th Cir. 1995).  Albertsons argues that

ORDER-15

Plaintiff's fee award should be reduced by 50% because she only succeeded on two of her four claims. Dkt. # 123 at 4. Plaintiff contends that because her retaliation and gender discrimination claims involved a common core of facts, the fee award should not be reduced at all. Dkt. # 129 at 2.

Plaintiff's successful retaliation claims clearly shared a "common core" of facts with her unsuccessful gender discrimination claims and, as such, a 50% reduction is not appropriate. That said, the amount of the attorneys' fees should reflect that the Plaintiff obtained significant success on her retaliation claim but did not prevail on her gender discrimination claims, likely resulting in a lower recovery. *McCown v. City of Fontana*, 565 F.3d 1097, 1104 (9th Cir. 2009) (holding that "a comparison of damages awarded to damages sought" is relevant to a determination of the reasonable fee award). Accordingly, a moderate reduction is appropriate. When a reduction in the fee award is appropriate, the court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436–37. Here, the Court finds that an overall 15% reduction in attorneys' fees is appropriate to reflect Plaintiff's lack of success on two related, but significant claims.

### iv.   Contingent Multiplier

Under Washington state law, a plaintiff may move for a multiplier of attorneys' fees based on either the contingent nature of success or the quality of the work performed. *Chuong Van Pham v. City of Seattle, Seattle City Light*, 151 P.3d 976, 983 (Wash. 2007). Such an adjustment "should be reserved for exceptional cases where the need and justification are readily apparent." *Xieng v. Peoples Nat'l Bank of Washington*, 63 Wash. App. 572, 587 (1991) (quotation and citation omitted), *aff'd* 120 Wash.2d 512, 844 P.2d 389 (1993). Here, Ms. Johnson asks the Court to multiply the lodestar by 2.0 because the case was "difficult and risky." Dkt. # 104 at 10.

Without downplaying the risk that Plaintiff's counsel took on, the Court does not believe that this case was of sufficiently high risk or difficulty to warrant a multiplier.

ORDER-16

Plaintiff counsel's hourly rates are consistent with those of other lawyers in the area and inherently account for any risk associated with litigating this case. Although Plaintiff's prospect of recovery was by no means certain, the risks were not particularly unique for cases of this type—most of which are taken on contingency—and the Court does not believe the law requires a positive multiplier in every case with a contingent fee and skilled counsel.

Accordingly, Plaintiff's motion for attorneys' fees is **GRANTED in part** and **DENIED in part**. Accounting for all of the aforementioned reductions, the Court awards Plaintiff's counsel $726,052.47 in attorneys' fees and $40,726.88 in costs.

**D. <u>Motion for Adverse Tax Consequences</u>**

Ms. Johnson requests a supplemental judgment of $590,918.31 "gross up" to cover the taxes on her award. Dkt. # 119 at 2. Albertsons argues that Ms. Johnson is not entitled to a gross up because her proposed method of calculating the gross up is "deficient." Dkt. # 126 at 3-4. To the extent that the Court does decide to award a gross up, Albertsons asks the Court to adopt its calculation. Dkt. # 126 at 4.

Both Title VII and the WLAD allow a court to "gross up" an award to account for tax consequences. *See Clemons v Century Link*, 874 F.3d 1113 (9th Cir. 2017) and *Blaney v. International Association of Machinists*, 151 Wn.2d 203 (2004). The decision whether to award a gross up is within the sound discretion of the court, and a plaintiff is not presumptively entitled to one. *Clemons*, at 1117 (observing that "[t]here may be many cases where a gross up is not appropriate for a variety of reasons, such as the difficulty in determining the proper gross up or the negligibility of the amount at issue").

Here, Ms. Johnson seeks $590,918.31 in adverse tax consequences based on forensic economist Dr. Paul Torelli's calculations. *See* Dkt. # 120. Albertsons presents a competing declaration from forensic economist William E. Partin who criticizes Dr. Torelli's methodology and calculates the adverse tax consequences at $ 452,037. *See*

ORDER-17

Dkt. # 127.  In reply, Ms. Johnson submits a second declaration from Dr. Torelli, who addresses these criticisms and explains why they are not well-founded.  Dkt. # 133.

Overall, the Court finds that a tax gross up is appropriate.  Additionally, having reviewed the three reports, the Court finds Dr. Torelli's calculation persuasive. However, assuming Plaintiff accepts the remittitur, the damages award has now changed and, as a result, any tax gross up must be recalculated.  Therefore, the Court **GRANTS** Plaintiff's motion for adverse tax consequences contingent on Plaintiff's submission of a new calculation of the gross up.

### E.  Motion for Prejudgment Interest

Finally, Ms. Johnson seeks prejudgment interest on her past economic damages. Dkt. # 119 at 4.  Albertsons contests the award of prejudgment interest and Plaintiff's requested rate.  The Ninth Circuit has recognized that awards of prejudgment interest are appropriate in federal discrimination cases in order to secure "complete justice." *Clemens v. Centurylink Inc*., 874 F.3d 1113, 1116–17 (9th Cir. 2017). These decisions "are left to the sound discretion of the district court." *Id*. at 1117.

In most cases, the interest rate under 28 U.S.C. § 1961 is likely appropriate, but in certain cases a higher rate may be appropriate. *See Grosz-Salomon v. Paul Revere Life Ins. Co*., 237 F.3d 1154, 1163–64 (9th Cir. 2001).  For example, in *Blankenship v. Liberty Life Assur. Co. of Boston*, the Ninth Circuit held that the district court did not abuse its discretion by awarding prejudgment interest at a rate of 10.01% where the plaintiff proved that the money would have otherwise remained invested in a fund with that rate of return. *Blankenship v. Liberty Life Assur. Co. of Boston*, 486 F.3d 620, 628 (9th Cir. 2007).

Ms. Johnson argues that she is entitled to a 2.06% rate based off the "rate of return" on her 401(k) account.  Dkt. # 119 at 5.  Specifically, she claims that because she was forced to withdraw $320,884.78 from her retirement account to support herself, she is entitled to the 2.06% rate on her full backpay award. *Id.*; Dkt. # 121.  But Ms.

Johnson is not seeking prejudgment interest on the amount withdrawn and she does not offer any evidence that timely payment of her past economic damages would, *or even could,* have been invested into her retirement account and thereby earned 2.06% interest.  The evidence simply does not support a higher rate of prejudgment interest on the entire measure of economic damages.  *See Hanson v. Cty. of Kitsap, Wash.*, No. C13-5388RJB, 2015 WL 3965829, at *9 (W.D. Wash. June 30, 2015) (prejudgment interest not awarded where plaintiff failed to provide credible calculation of prejudgment interest).  Thus, the Court will award $14,000 in prejudgment interest at the statutory rate pursuant to 28 U.S.C. § 1961.

## IV.    CONCLUSION

For the above reasons, Defendant's motion for a new trial or, in the alternative, remittitur, is **GRANTED in part** and **DENIED in part** as follows:

1. Defendant's request for a new trial is **DENIED**.

2. Defendant's request for remittitur is **GRANTED**. The Court hereby **REMITS** the front pay award to $620,000, the emotional distress damages award to $200,000 and the punitive damages award to the statutory cap of $300,000.

3. Plaintiff will notify the Court within **14 days** of the date of this Order whether it accepts or rejects the remittitur.  Defendant's motion for a new trial on damages is **DENIED**, conditioned on Plaintiff's acceptance of the remittitur.  If Plaintiff rejects the remittitur, the Court will grant a new trial on damages.

Plaintiff's motion for attorneys' fees is **GRANTED in part** and **DENIED in part**.

1. Plaintiff is **AWARDED** $726,052.47 in attorneys' fees and $40,726.88 in costs.

ORDER-19

Plaintiff's motion for adverse tax consequences and prejudgment interest is **GRANTED in part and DENIED in part**.

1. Plaintiff is **AWARDED** $14,000 in prejudgment interest.
2. If the remittitur is accepted, Plaintiff is **ORDERED** to submit new calculations of the gross up necessary to offset the updated damages award.

DATED this 2nd day of July, 2020.

The Honorable Richard A. Jones
United States District Judge

ORDER-20